[Cite as *State v. Duncan*, 2022-Ohio-3665.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

STATE OF OHIO,                          :

    Plaintiff-Appellee,           :

                                     No. 110784

    v.                            :

DESMOND DUNCAN, JR.,                    :

    Defendant-Appellant.          :

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  October 13, 2022

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-20-649123-B

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Nora Bryan and Mahmoud Awadallah, Assistant Prosecuting Attorneys, *for appellee*.

Russell S. Bensing, *for appellant*.

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant Desmond Duncan ("Duncan") appeals his convictions for murder, felonious assault, and first-degree involuntary manslaughter.  He contends that the trial court erred in instructing the jury on self-defense; that the trial court erred in refusing to instruct the jury on certain lesser-included offenses; that the trial

court erroneously admitted evidence of Duncan's other acts in violation of Evid.R. 404(B), including juvenile adjudications; and that his convictions were against the sufficiency and manifest weight of the evidence. After a thorough review of the record and applicable law, this court affirms.

## I. Factual and Procedural History

{¶ 1} On June 16, 2019, Ramses Hurley ("Hurley"), a 19-year-old male, was ejected from the backseat of a moving vehicle and left behind in a pool of his own blood on South Moreland Boulevard in the Buckeye-Shaker neighborhood of Cleveland, a few feet from his home. Hurley's body contained numerous "road rash" abrasions indicating that his body had likely been dragged along the road. He was pronounced dead later that day. The medical examiner observed blunt-force injuries to Hurley's head and neck and determined that the manner of death was a homicide. These specific facts are nearly certain based upon video surveillance and available scientific evidence.

{¶ 2} The events occurring in the vehicle prior to Hurley's death are significantly less certain. What occurred in that vehicle was almost exclusively provided by Duncan and the driver of the vehicle, Trinity Campbell ("Campbell").

{¶ 3} Duncan and codefendants Campbell and Jaidee Miree ("Miree") were charged in an 11-count indictment. Duncan was charged with the following nine counts: aggravated murder in violation of R.C. 2903.01(B) with firearm specifications (Count 1); murder in violation of R.C. 2903.02(B) with firearm specifications (Count 2); aggravated robbery in violation of R.C. 2911.01(A)(3) with

firearm specifications (Count 3); aggravated robbery in violation of R.C. 2911.01(A)(1) with firearm specifications (Count 4); felonious assault in violation of R.C. 2903.11(A)(1) with firearm specifications (Count 5); felonious assault in violation of R.C. 2903.11(A)(2) with firearm specifications (Count 6); improperly handling firearms in a motor vehicle in violation of R.C. 2923.16(B) with firearm specifications (Count 7); involuntary manslaughter in violation of R.C. 2903.04(A) with firearm specifications (Count 8); and having weapons while under disability in violation of R.C. 2923.13(A)(2) (Count 10).

{¶ 4} Campbell testified at trial that prior to Hurley's death, she picked up Miree intending to purchase marijuana from Hurley. Since this was Campbell's first time making a purchase from Hurley, she wanted Miree, a friend of two to three months, to accompany her. Allegedly, none of the defendants knew Hurley prior to this encounter. Before arriving at Hurley's home, Miree instructed Campbell to pick up two of his friends, Duncan, and an unknown male who was referred to as "B.J." throughout the course of this case. During trial, Campbell testified that B.J. brought guns into the car and supplied one to Miree. Campbell claimed she never met either of these individuals, and in her first recitation of the events to Sergeant Aaron Reese[1] of the Cleveland Police Department, she neglected to mention that Duncan was also an occupant of the vehicle.

---

[1] At the time of the offense, Reese was a detective for the Cleveland Police Department. In 2019, he was promoted to sergeant.

{¶ 5} At trial, Campbell's review of the events suggested that she realized that her codefendants wanted to commit a robbery. She stated that before going to Hurley's house, she erroneously directed her G.P.S. to her coworker's house, and the vehicle occupants expressed intent to rob the coworker, but the plan fell through. Campbell then testified that before they went to Hurley's home, Duncan jumped into the cargo area of the backseat, displayed a gun, and told her to be quiet. Campbell was not initially forthcoming with details involving a robbery, and we note that one of the defense's theories was that Campbell merely acquiesced to the robbery narrative to appease the police and prosecutor.

{¶ 6} When Campbell's vehicle eventually arrived at Hurley's home, Hurley was finishing a drug transaction with another individual, Emanuel Adams ("Adams"). According to Campbell, Hurley entered the vehicle through the driver's side backdoor and was seated directly behind her. Hurley placed a scale and some marijuana on the center console. According to Campbell's testimony, as she was reaching into her wallet for cash to pay for her portion, Miree grabbed the marijuana from the scale and did not pay for it. Immediately after, Campbell noted that a "commotion" ensued in the backseat. Two gunshots were fired in the vehicle. She observed Hurley holding a gun. She also observed Duncan holding Hurley in a headlock and pointing a gun to his head. Miree began punching Hurley in the head. The backseat door opened, and Hurley was thrown from the vehicle. According to Campbell, as soon as Hurley was out of the vehicle, Miree encouraged Campbell to drive away.

{¶ 7} While leaving the scene, Campbell lost control of the vehicle and struck a brick pillar on Griffing Avenue. Campbell testified that Duncan instructed her to leave or else he would "pop" her. When the vehicle was wrested away from the pillar, she dropped the codefendants off at the location where she picked up Duncan, and Miree instructed her to clean the vehicle and urinate on the seats to remove any gunpowder residue. Campbell went home and followed the instructions to clean the vehicle. She placed bullet fragments and shell casings that she recovered from the vehicle in the sewer by her home, which were later retrieved by the Cleveland Police Department. She also smashed her cell phone.

{¶ 8} Duncan testified in his own defense at trial, and his version of the events differed from Campbell's considerably. He testified that he entered the vehicle expecting a ride to the music studio and did not need to purchase any marijuana, so he had his headphones on the entire time. Duncan denied ever needing to, or wanting to, rob Hurley. Instead of being in the cargo area with a gun, Duncan testified that he was right next to Hurley, in the middle of the backseat. Duncan stated that he did not even realize that something was wrong until Hurley pulled out a gun and pointed it towards Miree, and at that point he removed his headphones and attempted to disarm Hurley. He noted that he was concerned because he believed that Miree was shot and hurt. He then testified that he opened the door and pushed Hurley from the vehicle in defense of himself and the other vehicle occupants.

{¶ 9} The following additional evidence was also adduced at trial.

{¶ 10} Adams testified that he remained on scene following his transaction with Hurley, feeling that he had been given a smaller amount of marijuana than he paid for. He intended to confront Hurley about this after Hurley finished transacting with Campbell's vehicle. Instead, Adams became an eyewitness and testified that he had a direct line of sight to the vehicle and saw Hurley's body being thrown from the vehicle and Hurley's fingers being pried off the edge of the door before he struck the ground. Adams remained on scene when the police arrived.

{¶ 11} Lisa Przepyszny, a forensic scientist in the trace evidence department of the Cuyahoga County Regional Forensic Science Laboratory, testified as an expert in trace evidence. Przepyszny offered several significant opinions — that gunshot residue was found on Hurley's hands and that there were abrasions in the fabric of the clothing that Hurley was wearing that day consistent with his body impacting a rough surface. She also provided information about the bullet trajectories found inside the vehicle and the DNA evidence found on Hurley's clothing and inside the vehicle.

{¶ 12} Cecil Snowden was walking his dog at the time of the incident and testified as an eyewitness. Snowden testified that he heard two gunshots and saw a person coming out of the driver's side of the vehicle.

{¶ 13} Todd M. Barr, M.D. ("Dr. Barr"), testified as an expert in forensic pathology about the autopsy and examination of Hurley's body, noting Hurley's injuries as well as the cause and manner of death.

{¶ 14} Sergeant Reese from the Cleveland Police Department testified regarding his investigation of the case, including details from his interview with Campbell three days after the subject incident.

{¶ 15} The defense called Richard Cerney, a retired police detective, who opined that the subject vehicle could have been preserved for evidentiary examination until after trial was complete.

{¶ 16} The defense also called Curtis Lewis, Duncan's manager with respect to his music career, who testified that Duncan did not need money, nor did he need to rob someone for marijuana.

{¶ 17} Prior to trial, Campbell accepted a plea deal with the state, part of which contained an agreement to testify truthfully at Duncan and Miree's joint trial. The jury found Duncan guilty of felony murder (Count 2), felonious assault (Count 5), improperly handling firearms in a motor vehicle (Count 7), and involuntary manslaughter (Count 8). The jury acquitted both Miree and Duncan of all firearm specifications.

{¶ 18} Duncan received life without the possibility of parole for 15 years for murder, felonious assault, and involuntary manslaughter which were merged for sentencing. Duncan received 12 months for improperly handling firearms in a motor vehicle, to be served concurrently. Duncan appealed, assigning six errors for our review:

> I. The trial court erred in failing to properly instruct the jury on the affirmative defenses of self-defense and defense of another, relieving the State of its duty to disprove self-defense beyond a reasonable doubt,

in derogation of Defendant's right to due process of law as protected by the 5th and 14th Amendments to the United States Constitution, and Article 1, §§ 5, 10, and 16 of the Ohio Constitution.

II. The trial court erred in refusing to instruct the jury on the lesser-included offenses of assault and involuntary manslaughter as a third-degree felony, in derogation of Defendant's right to due process of law as protected by the 5th and 14th Amendments to the United States Constitution, and Article 1, §§ 5, 10, and 16 of the Ohio Constitution.

III. The trial court erred in admitting evidence of other acts against Duncan, which were not admissible as *res gestae* or under Evid. R. 404(B), in derogation of Defendant's right to due process of law as protected by the 5th and 14th Amendments to the United States Constitution, and Article 1, §§ 5, 10, and 16 of the Ohio Constitution.

IV. The trial court erred in admitting testimony concerning the Defendant's juvenile adjudications, in derogation of Defendant's right to due process of law as protected by the 5th and 14th Amendments to the United States Constitution, and Article 1, §§ 5, 10, and 16 of the Ohio Constitution.

V. The trial court erred in entering convictions for murder, felonious assault, and first-degree felony involuntary manslaughter, as those convictions were based on insufficient evidence, and there was insufficient evidence to show that the [D]efendant had not acted in self-defense, in derogation of Defendant's right to due process of law as protected by the 5th and 14th Amendments to the United States Constitution, and Article 1, §§ 5, 10, and 16 of the Ohio Constitution.

VI. The Defendant's convictions for murder, felonious assault, and first-degree felony involuntary manslaughter and the determination that the State had disproved that Defendant had acted in self-defense, were against the manifest weight of the evidence, as those convictions were based on insufficient evidence, in derogation of Defendant's right to due process of law as protected by the 5th and 14th Amendments to the United States Constitution, and Article 1, §§ 5, 10, and 16 of the Ohio Constitution.

## II. Law and Analysis

## A. Self-Defense and Duty to Retreat

{¶ 19} In his first assignment of error, Duncan contends that the trial court misapplied the laws of self-defense and the duty to retreat in instructing the jury.

{¶ 20} The instructions provided to the jury as they pertained to self-defense and/or defense of another were:

> THE COURT: * * * To prove that the defendants did not use deadly force in self-defense or defense of another, the State must prove beyond a reasonable doubt at least one of the following:
>
> A, the defendant was at fault in creating the situation giving rise to the death of Ramses Hurley;
>
> Or, B, the defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm;
>
> Or, C, the duty, the defendant violated a duty to retreat to avoid danger;
>
> Or, D, the defendant did not use reasonable force.

(Tr. 2448-2449.)

{¶ 21} First, Duncan argues that the jury instructions contemplated that deadly force was used, where it was the state's burden to present a case from which the jury could conclude that the force used against Hurley was deadly or nondeadly. Duncan argues that this was a "conclusive presumption." During trial, counsel for Miree proposed self-defense jury instructions that only contemplated deadly force.

> [MIREE'S COUNSEL]: * * * Evidence was presented that tends to support a finding that the defendant used deadly force in self-defense.

(Tr. 2055.)

{¶ 22} Duncan's counsel did not object to the instructions proposed by Miree's counsel, nor did Duncan's counsel offer any instructions that contemplated deadly or nondeadly force. Because Duncan's counsel failed to object to these instructions and raises them for the first time on appeal, our analysis is constrained to plain error:

> In the absence of objection, any error is deemed to have been waived unless it constitutes plain error. To constitute plain error, the error must be obvious on the record, palpable and fundamental so that it should have been apparent to the trial court without objection. *See State v. Tichon*, 102 Ohio App.3d 758, 767, 658 N.E.2d 16 (1995). Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996). Notice of plain error is to be taken with utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice. *State v. Phillips*, 74 Ohio St.3d 72, 83, 656 N.E.2d 643 (1995).

*State v. Potter*, 8th Dist. Cuyahoga No. 81037, 2003-Ohio-1338, ¶ 43.

{¶ 23} Duncan has not argued plain error on appeal, and we decline to sua sponte consider the issue without a proper argument before us. *State v. Speights*, 8th Dist. Cuyahoga No. 109733, 2021-Ohio-1194, ¶ 14, citing *State v. Sims*, 10th Dist. Franklin No. 14AP-1025, 2016-Ohio-4763, ¶ 11.

{¶ 24} Second, Duncan argues that the jury was erroneously instructed that Duncan had a duty to retreat before acting in self-defense. In support of this, Duncan sets forth two arguments. Duncan first argues that there is no duty to retreat when a defendant uses nondeadly force. Duncan also argues that R.C. 2901.09, as amended on April 6, 2021, eliminates a duty to retreat from the

perceived threat if "that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(B). The amended statute also thoroughly eliminates a trier of fact's ability to consider the duty to retreat "in determining whether or not a person who used force in self-defense [or] defense of another * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." R.C. 2901.09(C).

{¶ 25} We disagree that the jury was erroneously instructed. A statute may not be applied retroactively unless expressly made retroactive. *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542, 882 N.E.2d 899, ¶ 9. Further, a statute is presumed to operate prospectively unless expressly made retroactive. R.C. 1.48. Further, this court has noted that "'[i]n Ohio, when the General Assembly reenacts, amends, or repeals a criminal statute, the substantive provisions of the former law apply to all pending prosecutions, but the defendants receive the benefit of a reduced "penalty, forfeiture, or punishment" in the statute as amended, unless the General Assembly expresses another intent.'" *State v. Hurt*, 8th Dist. Cuyahoga No. 110732, 2022-Ohio-2039, ¶ 59, quoting *State v. Solomon*, 2012-Ohio-5755, 983 N.E.2d 872, ¶ 16 (1st Dist.), citing R.C. 1.58, and *State v. Rush*, 83 Ohio St.3d 53, 697 N.E.2d 634 (1998).

{¶ 26} This court has also previously held that the amendments to R.C. 2901.09(C) do not apply retroactively and are not required if the April 6, 2021 amendments were not in effect at the time of the offense. *Hurt* at ¶ 61; *State v. Claytor*, 8th Dist. Cuyahoga No. 110837, 2022-Ohio-1938, ¶ 79. Consistent with this

court's previous holdings, we find that the trial court did not err in instructing the jury on the duty to retreat because it existed at the time of the offense. Additionally, one of our sister districts, the Second District, has come to the same conclusion regarding the amendments to R.C. 2901.09. *See, e.g., State v. Jones*, 2d Dist. Montgomery No. 29214, 2022-Ohio-3162, ¶ 39; *State v. Degahson,* 2d Dist. Clark No. 2021-CA-35, 2022-Ohio-2972, ¶ 19; *see also Jones* at ¶ 40 (declining to address duty-to-retreat errors because the inquiry appears purely academic when the place of retreat that is contemplated is a vehicle, where retreat is difficult to conceive).

{¶ 27} We are also unpersuaded by Duncan's contention that the Supreme Court's recent opinion in *State v. Brooks*, Slip Opinion No. 2022-Ohio-2478, addressing the 2019 amendments to the self-defense statute (R.C. 2901.05), extends to the duty to retreat amendments. In *Brooks*, the Ohio Supreme Court held that the amendments to R.C. 2901.05 applied prospectively to all trials after the amendment's effective date, regardless of when the underlying conduct occurred. *Id.* at ¶ 23. In making this determination, the *Brooks* Court reasoned that R.C. 2901.05 as amended only shifted the burden and did not change the substance of a self-defense claim. *Id.* at ¶ 15 (the amendments neither provide nor take away any substantive right because even under the former R.C. 2901.05, defendants still had a right to make a self-defense claim). The duty to retreat amendment is different. Pursuant to this court's finding in *Hurt*, the amended R.C. 2901.09(C) is a substantive change inasmuch as it pertains to an element of the offense and removes an element that the factfinder must consider. *Hurt* at ¶ 61.

{¶ 28} Unlike the self-defense amendments that merely shift the burden, the amended R.C. 2901.09(C) is a substantive change and cannot be applied retroactively. The law as it existed at the time of the offense is the law that the jury must consider.

{¶ 29} We therefore find that the trial court properly instructed the jury pursuant to the version of R.C. 2901.09 that was in effect at the time of the offense. Accordingly, Duncan's first assignment of error is overruled.

## B. Lesser Included Offenses

{¶ 30} In his second assignment of error, Duncan argues that the trial court erred in failing to instruct the jury on the lesser included offenses of reckless assault and involuntary manslaughter as a third-degree felony.

{¶ 31} Trial courts have broad discretion to determine whether the record contains sufficient evidentiary support to warrant a jury instruction on a lesser included offense, and that will not be reversed absent an abuse of discretion. *State v. Henderson*, 8th Dist. Cuyahoga No. 89377, 2008-Ohio-1631, ¶ 10, citing *State v. Wright*, 4th Dist. Scioto No. 01CA2781, 2002 Ohio App. LEXIS 7274 (Mar. 26, 2002). An abuse of discretion connotes a trial court's decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When considering evidence of a lesser included offense, the court must view it in a light most favorable to the defendant. *State v. Campbell*, 69 Ohio St.3d 38, 630 N.E.2d 339 (1994). The instruction, however, is not warranted in every instance where some evidence is presented on a lesser included offense.

*State v. Smith*, 8th Dist. Cuyahoga No. 90478, 2009-Ohio-2244, ¶ 12, citing *State v. Shane*, 63 Ohio St.3d 630, 590 N.E.2d 272 (1992). An instruction on a lesser included offense is required only where "the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense." *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

{¶ 32} The Ohio Supreme Court provides a two-tiered analysis for determining whether a lesser included instruction is warranted.

> The first tier, also called the "statutory-elements step," is a purely legal question, wherein we determine whether one offense is generally a lesser included offense of the charged offense. *State v. Kidder*, 32 Ohio St.3d 279, 281, 513 N.E.2d 311 (1987). The second tier looks to the evidence in a particular case and determines whether "'a jury could reasonably find the defendant not guilty of the charged offense, but could convict the defendant of the lesser included offense.'" [*State v. Evans*, 122 Ohio St.3d 381, 2009-Ohio-2974, 911 N.E.2d 889, ¶ 13], quoting *Shaker Heights v. Mosely*, 113 Ohio St.3d 329, 2007-Ohio-2072, 865 N.E.2d 859, ¶ 11. Only in the second tier of the analysis do the facts of a particular case become relevant.

*State v. Deanda*, 136 Ohio St.3d 18, 2013-Ohio-1722, 989 N.E.2d 986, ¶ 6.

{¶ 33} Duncan argues that he was entitled to a jury instruction under Counts 5 and 6 (felonious assault) for the lesser included offense of reckless assault pursuant to R.C. 2903.13(B). The jury did not enter a finding of guilt for Count 6 pursuant to R.C. 2903.11(A)(2), which specifies that the assault was caused by a deadly weapon. Accordingly, Duncan did not suffer any prejudice from the court's failure to instruct the jury on the lesser included offense because it relates to Count 6, so we will only review Count 5.

{¶ 34} In denying the request, the trial court reasoned:

> I certainly don't think it applies to Count 6 in as much as that has the additional component of a deadly weapon. And, likewise, given the facts of the case, I don't think it would apply towards Count 5 either.

(Tr. 2419.)

{¶ 35} The first tier of the *Deanda* test is satisfied. This court has previously recognized reckless assault as the lesser included offense of felonious assault. *State v. McPherson*, 8th Dist. Cuyahoga No. 92481, 2010-Ohio-64, ¶ 7.

{¶ 36} Next, we review the second tier. Felonious assault as defined by R.C. 2903.11(A)(1), requires that an offender act "knowingly," while reckless assault, as defined by R.C. 2903.13(B), requires that an offender act "recklessly." This is the only difference between the two offenses. A person acts knowingly when the person is aware that their conduct will probably cause a certain result. R.C. 2901.22(B). A person acts recklessly when, with heedless indifference to the consequences, they disregard a substantial and unjustifiable risk that their conduct is likely to cause a certain result. R.C. 2901.22(C).

{¶ 37} Under R.C. 2901.22(A), the state was not required to prove that Duncan or Miree acted with the specific intention to cause a certain result. *State v. Jackson*, 10th Dist. Franklin No. 94APA04-531, 1994 Ohio App. LEXIS 5504, 14 (Dec. 8, 1994). Rather, the state need only prove that the defendant acted knowingly, regardless of his purpose. *Id.* A review of the facts indicates that no reasonable juror could have found that pushing Hurley from a moving vehicle was committed recklessly rather than knowingly. Duncan pushed Hurley from a moving

vehicle, pried Hurley's fingers from the door, and left Hurley in a road where a vehicle could strike him. Indeed, Duncan even testified that he knew Hurley would sustain an injury from being thrown from the vehicle. Therefore, the second tier of the analysis is not met, and the trial court did not err in concluding from the facts that a reckless assault instruction was not warranted.

{¶ 38} Duncan also asserts that the trial court erred in failing to instruct the jury under Count 8 (involuntary manslaughter) for the lesser included offense of involuntary manslaughter in the third degree. Where the elements of two offenses are "identical to or contained within the indicted offense, except for one or more mitigating elements," the lesser offense is considered an inferior degree offense. *State v. Deem*, 40 Ohio St.3d 205, 206, 533 N.E.2d 294 (1988). Under R.C. 2903.04(A), involuntary manslaughter is a first-degree felony if the predicate offense is a felony. Under R.C. 2903.04(B), involuntary manslaughter is a third-degree felony if the predicate offense is a misdemeanor, regulatory offense, or minor misdemeanor. Involuntary manslaughter in the third degree is plainly a lesser offense of involuntary manslaughter in the first degree. The first tier of the *Deanda* test is satisfied as to Duncan's request for a third-degree involuntary manslaughter instruction.

{¶ 39} Involuntary manslaughter decreases from a first-degree felony to a third-degree felony when the predicate offense is no longer a felony, but a misdemeanor. Duncan argues that because he was entitled to an instruction on reckless assault, that could have served as the predicate for an instruction on third-

degree involuntary manslaughter. Because we found that Duncan was not entitled to an instruction on reckless assault, there is no predicate misdemeanor upon which to base an instruction for third-degree involuntary manslaughter.

{¶ 40} Duncan's second assignment of error is overruled.

## C. Other Acts Evidence

{¶ 41} In his third assignment of error, Duncan argues that the trial court erred in admitting evidence of other acts against Duncan in violation of Evid.R. 404(B). Specifically, Duncan argues that the jury was not entitled to hear testimony regarding the planned robbery of Campbell's coworker.

{¶ 42} Campbell testified during trial that before going to Hurley's home, she erroneously directed her G.P.S. to a coworker's home. While at the coworker's home, she sold the coworker a vape cartridge. Campbell testified that after they left the coworker's home, Duncan suggested that they go back and rob the coworker, but that plan fell through. Duncan argues that this testimony was not admissible under Evid.R. 404(B), that the evidence of the other purported robbery was not part of the res gestae, and that it should have been barred under Evid.R. 403(A) due to the prejudicial effect of the evidence. We disagree.

{¶ 43} The admission or exclusion of evidence is left to the sound discretion of the trial court. *State v. Rogers*, 8th Dist. Cuyahoga No. 105879, 2018-Ohio-3495, ¶ 15, citing *State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). Further, whether evidence is relevant, confusing, or misleading is best left to the discretion of the trial court who is in a better position to analyze the evidence's impact on the jury. *Renfro*

*v. Black*, 52 Ohio St.3d 27, 31, 556 N.E.2d 150 (1990), citing *Columbus v. Taylor*, 39 Ohio St.3d 162, 164, 529 N.E.2d 1382 (1988); *Calderon v. Sharkey*, 70 Ohio St.2d 218, 222, 436 N.E.2d 1008 (1982).

{¶ 44} Duncan argues that the testimony about the plan to rob Campbell's coworker was purposed to "establish the defendants' propensity to commit robberies." We find that there is no error because the jury acquitted both Miree and Duncan of all charges as they related to a robbery. Any prejudice caused to Duncan by this testimony was harmless because the jury plainly rejected the state's theory that this incident was a robbery.

{¶ 45} Duncan's third assignment of error is therefore overruled.

### D. Juvenile Record

{¶ 46} In his fourth assignment of error, Duncan argues that the trial court erred in admitting evidence concerning his juvenile adjudications.

{¶ 47} During trial, the state noted their intent to cross-examine Duncan on his juvenile record if the defense opened the door to his juvenile adjudications. Briefing was done overnight. The court significantly limited the state's mention of the juvenile record, allowing only one 2017 adjudication of aggravated robbery and kidnapping with firearm specifications.

{¶ 48} For ease of understanding, we repeat that the admission or exclusion of evidence is a matter left to the trial court's sound discretion; therefore, it will not be disturbed absent an abuse of discretion. *State v. Simmons*, 8th Dist. Cuyahoga No. 98613, 2013-Ohio-1789, ¶ 18, citing *State v. Frazier*, 8th Dist. Cuyahoga No.

97178, 2012-Ohio-1198, ¶ 17. An abuse of discretion connotes a trial court's decision that is unreasonable, arbitrary, or unconscionable. *Blakemore*, 5 Ohio St.3d at 21, 450 N.E.2d 1140.

{¶ 49} Evidence of juvenile adjudications are generally not admissible except as allowed by the General Assembly in R.C. 2151.358(H). However, "[w]hen a defendant in a criminal case is permitted to introduce evidence of his life history, he * * * may be cross examined with reference to the disposition of any charge preferred against him as a juvenile." *State v. Marinski*, 139 Ohio St. 559, 41 N.E.2d 387 (1942), paragraph one of the syllabus.

{¶ 50} During trial, Duncan took the stand in his own defense. He testified that he maintained a career as a hip-hop artist and went to the studio nearly every day. He further testified that he traveled for performances and that his music was released on several streaming platforms and he earned money from both performing and streaming his music. He testified that his manager helped him pay for studio time and any of his other needs with an allowance. Further, he testified that he did not need any money and was given anything he needed by his management team. Prior to beginning his music career, he attended high school at Lutheran West where he received a basketball scholarship. He testified that he had to wake up at 4:30 in the morning and take three busses to get to school. He also testified that he had never heard a noise as loud as those gunshots in his entire life.

{¶ 51} The trial court significantly limited Duncan's prior record, allowing the prosecution to mention only one adjudication. We find no abuse of discretion

in the trial court's determination to limit the record. Nonetheless, Duncan argues that his testimony did not "open the door" to his juvenile adjudications pursuant to *Marinski*. We disagree.

{¶ 52} Duncan testified about his life history, including his current pursuit of becoming a hip-hop artist, and his past endeavors including being a high school basketball player. He also indicated that he had never heard sounds as loud as those gunshots before. He also indicated that he has no reason to rob anyone. Taken together, we find that Duncan sufficiently "opened the door" to his juvenile record. The trial court did not err in allowing the limited 2017 adjudication of aggravated robbery and kidnapping with firearm specifications to become part of the record.

{¶ 53} We further note that the trial court gave a limiting instruction, instructing the jury that Duncan's juvenile record may only be utilized to "provid[e] context to answers to questions posed to him on direct examination" and that his juvenile record may not be considered as evidence that makes it more likely that he committed the subject offense. (Tr. 2441.) Juries are presumed to follow all instructions given to them, including limiting instructions. *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, 813 N.E.2d 637, ¶ 93; *State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 54.

{¶ 54} Duncan's fourth assignment of error is overruled.

### E. Sufficiency and Manifest Weight

{¶ 55} In his fifth assignment of error, Duncan contends that his convictions for murder, felonious assault, and felony involuntary manslaughter were based on

insufficient evidence. He further alleges that the evidence was not sufficient to support a finding that he did not act in self-defense. In his sixth assignment of error, Duncan contends that his convictions for murder, felonious assault, and felony involuntary manslaughter were against the manifest weight of the evidence. He further contends that the manifest weight of the evidence did not disprove that he acted in self-defense.

{¶ 56} A manifest weight challenge and a sufficiency of the evidence challenge are two distinct challenges to the evidence presented. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.

### 1. Manifest Weight

{¶ 57} A challenge to the manifest weight of the evidence "'involves the inclination of the greater amount of credible evidence.'" *State v. Harris*, 8th Dist. Cuyahoga No. 109060, 2021-Ohio-856, ¶ 32, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Weight of the evidence examines "'the evidence's effect of inducing belief.'" *Id.*, quoting *Wilson* at *id.*, citing *Thompkins* at 386-387. In reviewing a manifest-weight claim, the court must consider all of the evidence in the record, the reasonable inferences made from it, and the credibility of the witnesses to determine ""'whether in resolving conflicts in the evidence, the factfinder clearly lost its way and created such a manifest miscarriage of justice * * *."'" *Id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Finally, the discretionary power to grant a new

trial should be reserved for exceptional cases where "'the evidence weighs heavily against the conviction.'" *Thompkins* at *id.*, quoting *Martin* at 175.

{¶ 58} Duncan suggests that because the jury rejected Campbell's testimony regarding the robbery and firearms, they did not find that she was a credible witness and thus, all of her testimony should be discredited. We disagree. As the factfinders, the jury was free to believe any or all of the evidence presented.

{¶ 59} We find it necessary to note that the testimony of Campbell and Duncan, the only two witnesses who were actually present in the vehicle, raise significant credibility concerns. Turning first to Campbell, she testified that at the time of this incident, she was high on marijuana and admitted that she smoked marijuana two or three times before the incident. She testified that after the first shot went off in the vehicle, she felt dazed and testified that "everything was white." (Tr. 1373.) Campbell was confronted with the inconsistencies in her testimony on cross-examination, notably the fact that each time she provided information, she differed or added something new. Campbell also received a plea deal in exchange for truthful testimony, which was indicated to the jury many times throughout trial.

{¶ 60} Duncan told a completely different version of the events. He testified that he was unaware of any tension or problems in the vehicle because he was listening to music on his headphones in the back seat and did not become aware that there was a problem until he noticed Hurley pointing a gun at Miree. This starkly contrasts Campbell's testimony that Duncan jumped into the cargo area of the vehicle, displayed a gun, and instructed her to remain silent, likely with the intention

of robbing Hurley. Duncan's testimony that he did not intend to rob anyone is further contradicted by Campbell's testimony that the occupants of the vehicle desired to rob Campbell's coworker prior to arriving at Hurley's house but were unsuccessful.

{¶ 61} Moreover, both Campbell and Duncan expressed trepidation in offering testimony and suggested that inconsistencies in their testimony were motivated by fear of being a "snitch." Indeed, we note that B.J., the other individual who was present in the vehicle during this incident, remains unidentified. Additionally, the evidence tends to demonstrate that the full story of what occurred in that vehicle has not been revealed. Specifically, there was testimony that the sole objective of this excursion was for Miree to supervise a transaction with a new, unknown marijuana dealer. However, Miree, for reasons unknown, instructed Campbell to pick up two other individuals that she did not know and had never met before, along the way. We acknowledge that from the evidence presented, the jury was tasked with synthesizing divergent testimony, significant circumstantial evidence, and drawing reasonable inferences therefrom.

{¶ 62} The jury was charged with a complicity instruction pursuant to R.C. 2923.03 and thus, could have considered evidence against Miree as evidence against Duncan if they found that Duncan and Miree were accomplices. The trial court also instructed that it was within the province of the jury to determine whether Campbell was an accomplice. The evidence presented supports the conclusion that the defendants acted in concert.

{¶ 63} Pertinently, all of the codefendants were present in the vehicle when Hurley was thrown from it, including B.J. who is unknown to date. Evidence was presented that Miree instructed Campbell to pick up Duncan and B.J., even though Campbell did not know them. When asked why Miree instructed her to pick them up, Campbell stated, "he just said we've got to go to that house" and that "there was no explanation." (Tr. 1239.) Campbell testified that when Duncan got into the vehicle, he was being aggressive and asking to drive. After the incident occurred, Campbell dropped all three passengers off at the same location where Duncan was picked up and they removed items from the vehicle, including Hurley's boot. Miree also instructed Campbell to clean her vehicle and remove evidence, including bullets. Miree came to Campbell's residence about four times before she spoke with the police. Even though the jury rejected the robbery theory, Campbell's testimony also indicated that she realized at some point that the occupants wanted to commit a robbery and even attempted to rob her coworker before reaching Hurley's home. The weight of the evidence presented supports a conclusion that the vehicle's occupants were acting in concert.

{¶ 64} To convict Duncan of felony murder under R.C. 2903.02(B), the state was required to prove that Duncan caused Hurley's death as a proximate result of the commission of a violent felony in the first or second degree. The state listed the predicate offenses as aggravated robbery and felonious assault, and the jury only found Duncan guilty of felonious assault. For a felonious assault conviction, the state was required to prove that Duncan knowingly caused serious physical harm to

Hurley. R.C. 2903.11(A)(1). Serious physical harm, as it relates to this matter, is defined as physical harm that carries a substantial risk of death and/or involves some permanent incapacity or disfigurement. R.C. 2901.01(A)(5)(b)-(d). We will therefore review the evidence supporting the felonious assault, with the knowledge that Hurley died as a result of this incident, which certainly constitutes serious physical harm.

{¶ 65} A review of the record abundantly supports a felonious assault conviction. Duncan admitted that he pushed Hurley from a moving vehicle with the knowledge that Hurley was likely to sustain an injury. Dr. Barr testified that the deep contusions to Hurley's face could have been caused by a physical altercation or the impact with the road. Dr. Barr also testified that Hurley's ultimate cause of death, a hinge-type fracture of the neck, is unique because it "takes a lot of force to generate" and is typically seen "in pedestrians that are hit by cars, when there are motor vehicle accidents, high velocity, any kind of a high-velocity injury." (Tr. 1933.) Evidence was also presented that Miree repeatedly punched Hurley in the face after Hurley fired shots. All of this considered, the manifest weight of the evidence presented supports that Duncan is guilty of felonious assault.

{¶ 66} Duncan also argues that the state did not meet its burden in proving that he did not act in self-defense. Pertinently, the jury was instructed:

> THE COURT: * * * To prove that the defendants did not use deadly force in self-defense or defense of another, the State must prove beyond a reasonable doubt at least one of the following:

A, the defendant was at fault in creating the situation giving rise to the death of Ramses Hurley;

Or, B, the defendant did not have reasonable grounds to believe and an honest belief, even if mistaken, that he was in imminent or immediate danger of death or great bodily harm;

Or, C, the duty, the defendant violated a duty to retreat to avoid danger;

Or, D, the defendant did not use reasonable force.

(Tr. 2448-2449.)

{¶ 67} A review of the facts indicates that the jury could have concluded that Duncan and/or Miree were not acting in self-defense. Testimony indicated that Miree grabbed the marijuana from the scale without paying for it, which lends itself to an inference that Miree was an instigator. There is also evidence that Miree instigated the entire situation by inviting Duncan and B.J. into the vehicle on the way to Hurley's home. Though this is not an exhaustive list, we conclude that the record tends to support that the jury could have rejected that Duncan and Miree were acting in self-defense.

{¶ 68} Duncan also argues that his involuntary manslaughter conviction was against the manifest weight of the evidence. Under R.C. 2903.04(A), the state was required to prove that Duncan caused Hurley's death as a proximate result of committing or attempting to commit a felony. Again, the state named the predicate felonies as aggravated robbery and felonious assault; since the jury acquitted Duncan of all robbery charges, felonious assault was the predicate felony. We already determined that the evidence supports a finding of felonious assault, and further supports a finding that these actions actually caused the death of Hurley.

{¶ 69} After reviewing the record, weighing the evidence, reviewing all reasonable inferences, and examining witness credibility, we cannot conclude that the jury lost its way and created such a manifest miscarriage of justice to warrant a new trial. Duncan's sixth assignment of error is overruled.

### 2. Sufficiency of the Evidence

{¶ 70} "A claim of insufficient evidence raises the question whether the evidence is legally sufficient to support the verdict as a matter of law." *State v. Parker*, 8th Dist. Cuyahoga No. 110716, 2022-Ohio-1237, ¶ 7, citing *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. The relevant inquiry in a sufficiency challenge is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime existed beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. When making a sufficiency determination, an appellate court does not review whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supports the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. Under a sufficiency challenge, witness credibility is immaterial; the appellate court must defer to credibility determinations of the trier of fact and only review issues of law. *Parker* at ¶ 7.

{¶ 71} Balancing the evidence and testimony discussed above, as well as all other evidence in the record, we find that a reasonable factfinder could conclude that Duncan intended to cause serious physical harm to Hurley and that Hurley's death

proximately resulted from Duncan's actions. Thus, the evidence presented, if believed, was sufficient to establish the elements of murder, felonious assault, and involuntary manslaughter. Duncan's fifth assignment of error is overruled.

### III. Conclusion

{¶ 72} We overrule all of Duncan's assignments of error. The trial court did not err in its instructions to the jury on self-defense and the duty to retreat; the trial court did not err in refusing to instruct the jury on the lesser included offenses of assault and involuntary manslaughter in the third degree; the trial court did not err in allowing evidence of the alleged planned robbery of Campbell's coworker into the record; the trial court did not err in admitting Duncan's juvenile adjudications; and Duncan's convictions were not against the manifest weight of the evidence nor were they based on insufficient evidence. Duncan's convictions are affirmed.

{¶ 73} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

CORNELIUS J. O'SULLIVAN, JR., J., CONCURS;
EILEEN A. GALLAGHER, J., DISSENTS WITH SEPARATE OPINION

EILEEN A. GALLAGHER, J., DISSENTING:

{¶ 74} I respectfully dissent. I would reverse Duncan's convictions for murder, felonious assault and first-degree felony involuntary manslaughter (Counts 2, 5 and 8) and remand for a new trial on those counts.

**Lesser Included Offenses**

{¶ 75} In his second assignment of error, Duncan contends that he was denied due process and a fair trial because the trial court refused to instruct the jury, as requested, regarding (1) assault under R.C. 2903.13(B) ("reckless assault") as a lesser included offense of felonious assault as charged in Count 5 and (2) third-degree felony involuntary manslaughter under R.C. 2903.04(B) (with reckless assault as the predicate offense) as a lesser included offense of felony murder (with felonious assault as the predicate offense) as charged in Count 2 and first-degree felony involuntary manslaughter (with felonious assault as the predicate offense) as charged in Count 8. Duncan asserts that, if the jury been instructed on reckless assault, it might have determined that Duncan did not cause serious physical harm to Hurley knowingly, but recklessly, finding him not guilty of felonious assault and

guilty of reckless assault. He further argues that because reckless assault is a misdemeanor, a conviction for reckless assault (rather than felonious assault) could not support a conviction for felony murder as charged in Count 2 or a conviction for first-degree felony involuntary manslaughter as charged in Count 8.

{¶ 76} "A criminal defendant is sometimes entitled to a jury instruction that allows the jury to consider convicting the defendant of a lesser included offense as an alternative to convicting for the offense for which the defendant was charged." *State v. Owens*, 162 Ohio St.3d 596, 597, 2020-Ohio-4616, 166 N.E.3d 1142, ¶ 8, citing *State v. Thomas*, 40 Ohio St.3d 213, 216-218, 533 N.E.2d 286 (1988).

{¶ 77} Count 5 charged Duncan with felonious assault under R.C. 2903.11(A)(1), which states, in relevant part, "No person shall knowingly * * * [c]ause serious physical harm to another." Reckless assault is proscribed in R.C. 2903.13(B), which provides, in relevant part, "No person shall recklessly cause serious physical harm to another." Count 2 charged Duncan with felony murder under R.C. 2903.02(B) which states, "No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of [R.C.] 2903.03 or 2903.04." Count 8 charged Duncan with first-degree felony involuntary manslaughter under R.C. 2903.04(A), which states, in relevant part, "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." Third-degree felony involuntary manslaughter is proscribed in R.C. 2903.04(B), which provides, in

relevant part, "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree."

{¶ 78} The parties do not dispute that, as statutorily defined, reckless assault in violation of R.C. 2903.13(B) is a lesser included offense of felonious assault in violation of R.C. 2903.11(A)(1), *see, e.g., State v. Benson,* 8th Dist. Cuyahoga No. 106214, 2018-Ohio-2235, ¶ 24, *State v. Holcomb,* 7th Dist. Columbiana No. 18 CO 0039, 2020-Ohio-561, ¶ 31, or that because reckless assault is a misdemeanor, a conviction for reckless assault (rather than felonious assault) could not support a conviction for felony murder as charged in Count 2 or a conviction for first-degree felony involuntary manslaughter as charged in Count 8, but could, instead, support a conviction for third-degree felony involuntary manslaughter under R.C. 2903.04(B). At issue in this case is whether sufficient evidence was presented below to warrant a jury instruction on reckless assault as a lesser included offense.

{¶ 79} A trial court must instruct the jury on a lesser included offense if, under any reasonable view of the evidence, it would be possible for the jury to find defendant not guilty of the offense charged and guilty of the lesser offense. *See, e.g., State v. Wine,* 140 Ohio St.3d 409, 418, 2014-Ohio-3948, 18 N.E.3d 1207, ¶ 32, 34; *see also Thomas,* 40 Ohio St.3d 213, 533 N.E.2d 286, at paragraph two of the syllabus ("Even though an offense may be statutorily defined as a lesser included offense of another, a charge on such lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the

crime charged and a conviction upon the lesser included offense."); *State v. Miller*, 8th Dist. Cuyahoga No. 109130, 2021-Ohio-2924, ¶ 86. An appellate court reviews a trial court's decision whether to give a requested jury instruction on a lesser included offense for abuse of discretion. *State v. Parker*, 8th Dist. Cuyahoga No. 110563, 2022-Ohio-377, ¶ 11; *Miller* at ¶ 87, citing *State v. Rucker*, 2018-Ohio-1832, 113 N.E.3d 81, ¶ 67 (8th Dist.).

**{¶ 80}** The distinguishing element between felonious assault under R.C. 2903.11(A)(1) and reckless assault under R.C. 2903.13(B) is whether the defendant acted knowingly or recklessly. A person acts "knowingly" when, "regardless of purpose," "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). A person acts "recklessly" when, "with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C). Both offenses require that the act caused serious physical harm.[2]

---

[2] "Serious physical harm to persons" is any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
(b) Any physical harm that carries a substantial risk of death;
(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

{¶ 81} The state maintains that the trial court did not abuse its discretion in refusing to give Duncan's requested jury instructions on lesser included offenses because, based on Campbell's testimony, the evidence showed that Duncan "acted knowingly, not recklessly" and was, therefore, "insufficient to warrant the requested instructions."

{¶ 82} In support of its position, the state points to the following testimony by Campbell:

> The testimony given by Trinity Campbell was that she and the Appellant with Miree went to the victim's home for what she understood to be a robbery. Tr. 1247-48; Tr. 1257. Once she pulled up, Appellant jumped into the rear of the vehicle and hid. Tr. 1251-52. Once the marijuana was on the console, the Miree [sic], who had a firearm, snatched it. Tr. 1255. Another gun came out and went off, and Trinity Campbell testified that Appellant had the victim in a headlock with a gun to him, and Miree was punching him in the face. Tr. 1255-56, 1588. These individuals acted knowingly, not recklessly. Miree committed a felonious assault when he was punching the victim over and over in the face while the Appellant had a firearm and he was tossed out of the vehicle. This was the evidence at trial and what the trial court had to assess when deciding whether to instruct on lesser included offenses.

{¶ 83} However, Campbell's testimony alone is not dispositive of the issue. In determining whether lesser included offense instructions are appropriate, a trial court is required to consider all the evidence presented, viewing that evidence in the light most favorable to the defendant. *Wine*, 140 Ohio St.3d 409, 2014-Ohio-3948,

---

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

R.C. 2901.01(A)(5).

18 N.E.3d 1207, at ¶ 21, citing *State v. Monroe*, 105 Ohio St.3d 384, 2005-Ohio-2282, 827 N.E.2d 285, ¶ 37; *Miller*, 8th Dist. Cuyahoga No. 109130, 2021-Ohio-2924, at ¶ 86. That evidence included Duncan's testimony.

{¶ 84} In support of its determination that "the trial court did not err in concluding from the facts that a reckless assault instruction was not warranted," the majority observes:

> [N]o reasonable juror could have found that pushing Hurley from a moving vehicle was committed recklessly rather than knowingly. Duncan pushed Hurley from a moving vehicle, pried Hurley's fingers from the door, and left Hurley in a road where a vehicle could strike him. Indeed, Duncan even testified that he knew Hurley would sustain an injury from being thrown from the vehicle.

*See* ¶ 37 above. I do not believe the majority's view of "the facts" is consistent with the requirement that the evidence be viewed in the light most favorable to the defendant.

{¶ 85} Duncan testified that Campbell had agreed to give him, Miree and B.J. a ride to the music studio, where Duncan worked on his hip-hop music. Tr. 2196-2198, 2203. Duncan indicated that Campbell was in the driver's seat, that he was in the rear passenger seat behind Campbell, that Miree was in the front passenger seat and that B.J. was seated behind Miree. Tr. 2206-2207, 2211-2212. Duncan stated that although the others were planning to stop and purchase marijuana on the way, he did not need any marijuana and that he was wearing headphones and listening to music as Campbell drove. Tr. 2203-2204, 2212, 2215.

**{¶ 86}** Duncan testified that when they arrived at the location arranged for the marijuana purchase, the drug dealer, Hurley, opened the rear driver-side door and got into the vehicle, and Duncan moved over into the rear middle seat. Tr. 2212-2215. Duncan testified that he heard "shouting over his music" and that when he pulled out his headphones, he saw that Hurley had a gun and was pointing it at Miree. Tr. 2215-2216.

**{¶ 87}** Duncan testified that he had no intent to rob Hurley or anyone else that day, denied that he had wanted to harm Hurley and denied that he had crawled over the back seat and hid in the trunk area of the vehicle with a gun as described by Campbell. Tr. 2214, 2222-2223, 2226-2227, 2344.

**{¶ 88}** Duncan testified that when he saw Hurley's gun, he grabbed Hurley's hands, which were around the gun, and pulled them towards him. Tr. 2216-2217. He stated that they were in "kind of like a tug of war" when Hurley fired the gun once towards Miree. Tr. 2217. Duncan stated that he thought Hurley had shot Miree. Tr. 2219-2220. As Hurley pulled back away from Duncan and they continued to struggle for the gun, a second shot "went off" towards Campbell. Tr. 2217-2218. Duncan stated that he then thought Campbell had been shot. Tr. 2224-2225.

**{¶ 89}** Duncan stated that, at this point, Hurley's back was turned toward the rear driver-side door and Duncan was "almost, like, in his lap." Tr. 2218. Duncan testified that, as they continued to struggle, Hurley dropped the gun and it fell onto the floor of the vehicle in front of their feet. Tr. 2218-2219. Duncan stated that he did not attempt to retrieve the gun because he was not trying to shoot Hurley; he

just wanted to get the gun away from Hurley.  Tr. 2219.  Duncan testified that he thought that if Hurley retrieved the gun, Hurley would shoot Duncan too.  Tr. 2220, 2344.

{¶ 90} As to what happened next, Duncan testified:

Q.  So once you're reaching for [Hurley's] hands —

A.  Yes.

Q.  — and the gun falls, what did you decide to do?

A.  Well, push him out of the car.  That's what — that's the first thing that came to my mind.  Like, we were up against the car and on the car, so that was pretty much the first thing that came to my mind.

Q.  Did you — did you know that the car was moving at that moment?

A.  I didn't know it was moving.  When I see on the video, I couldn't even really believe it.  But, like, I didn't know it was moving.

Tr. 2220-2221.

{¶ 91} Duncan testified that, to avoid getting shot, he felt like he either had to "go for the gun" or push Hurley out of the vehicle and that he chose to push Hurley out of the vehicle:

Q.  Just to be clear, why did you push him out of the car?

A. I just wanted him away from the gun.  Like, that's all. I wanted him away from the gun.  Like, I didn't want to try to go for the gun and then he gets the gun because it would have been us both going for the gun.  I would have had to let him go and then we both going for the gun then and now he gets the gun and then — * * * He could have done anything. Kicked it, anything. I wasn't — that was the first thing for my mind. Once I got the gun out of his hands, I felt comfortable enough that — to push him out of the car and get him away from the gun.

Tr. 2221-2222, 2234. Duncan denied that Miree punched Hurley. Duncan stated that he was "the only one who touched [Hurley]." Tr. 2332.

{¶ 92} Duncan testified that he did not call police after the incident because he "didn't know [Hurley] was dead" and "nobody [he] was with was hurt." Tr. 2223. Duncan stated, "I'm not going to say I didn't think [Hurley] was hurt. He got pushed out of a car, but I didn't think he was dead." *Id.* Duncan did not testify that "he knew Hurley would sustain an injury from being thrown from the vehicle," as the majority posits.

{¶ 93} The incident was captured, in part, on surveillance video footage obtained from a nearby apartment complex. The video shows the vehicle's movements prior to, at the time of, and immediately following the incident. At the time Hurley was pushed out of the vehicle, it appears the vehicle was moving very slowly.

{¶ 94} Considering all of the evidence presented at trial, viewed in the light most favorable to Duncan, including Duncan's testimony, the surveillance video, the chaos that erupted inside the vehicle and the very brief time that elapsed between Hurley entering the vehicle, the shots being fired inside the vehicle and Hurley being pushed from the vehicle, I believe a jury could have reasonably found that Duncan acted "recklessly" — "with heedless indifference to consequences," "disregard[ing] a substantial and unjustifiable risk" that his actions were "likely to cause" serious physical harm to Hurley — as opposed to "knowingly" — "aware" that his actions would "probably cause" serious physical harm to Hurley.

{¶ 95} Accordingly, I would find that the trial court abused its discretion in failing to instruct the jury regarding reckless assault and third-degree felony involuntary manslaughter as lesser included offenses and would sustain Duncan's second assignment of error.

**Jury Instructions Regarding the Duty to Retreat**

{¶ 96} I would also reverse Duncan's convictions for murder, felonious assault and first-degree felony involuntary manslaughter (Counts 2, 5 and 8) because I believe the trial court improperly included jury instructions regarding a duty to retreat when instructing the jury regarding self-defense and defense of another.

{¶ 97} The offenses at issue in this case occurred on June 16, 2019. Duncan was indicted on March 3, 2020, and trial commenced on June 7, 2021. Effective April 6, 2021 — while Duncan's case was pending — R.C. 2901.09 was amended to eliminate a duty to retreat before using force in self-defense or defense of another if a person is "in a place" where he or she "lawfully has a right to be" (the "2021 amendments"). R.C. 2901.09(B).

{¶ 98} Prior to the 2021 amendments, R.C. 2901.09(B) stated:

> For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence, and a person who lawfully is an occupant of that person's vehicle or who lawfully is an occupant in a vehicle owned by an immediate family member of the person has no duty to retreat before using force in self-defense or defense of another.

R.C. 2901.09(B) now states:

For purposes of any section of the Revised Code that sets forth a criminal offense, a person has no duty to retreat before using force in self-defense, defense of another, or defense of that person's residence if that person is in a place in which the person lawfully has a right to be.

{¶ 99} The 2021 amendments also added R.C. 2901.09(C), which states: "A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety."

{¶ 100} During a break in the trial, Miree's counsel proffered various self-defense jury instructions. The proposed jury instructions included instructions stating that "the defendant is allowed to use deadly force in self-defense" and that "[e]vidence was presented that tends to support a finding that the defendant used deadly force in self-defense." Tr. 2034-2038. Duncan's counsel did not object to these objections. Miree's counsel also proposed the following jury instruction regarding the absence of a duty to retreat:

Under Ohio law, an individual does not have a duty to retreat before acting in self-defense. In deciding whether the defendant reasonably believed that force was necessary to prevent death or great bodily harm, you may not consider the possibility that the defendant could have retreated or tried to escape rather than using force in self-defense.

Tr. 2037-2038.

{¶ 101} Prior to closing arguments, the state requested that the trial court remove the no-duty-to-retreat instruction from the self-defense jury instructions and that the trial court add a duty-to-retreat instruction. Tr. 2389. Although the

state acknowledged that, generally, "a person who is lawfully an occupant of a vehicle has no duty to retreat before using deadly force in self-defense," the state asserted that, based on case law, the "castle doctrine"[3] could not be invoked where, as here, the victim was not an intruder but was also a lawful occupant of the vehicle at the time force was used against him.[4]  Tr. 2389-2391.  Over defense counsel's objection, the trial court removed the no-duty-to-retreat instruction and included the duty-to-retreat instruction in the jury instructions.

{¶ 102} Jury instructions are "critically important to assist juries in determining the interplay between the facts of the case before it and the applicable

---

[3] The "castle doctrine," i.e., that a defendant who is lawfully in his or her residence has no duty to retreat before using force in self-defense, is derived from the maxim that "a man's home is 'his castle.'"  *State v. Comer*, 4th Dist. Gallia No. 10CA15, 2012-Ohio-2261, ¶ 11, citing 4 *Blackstone, Commentaries on the Laws of England*, Chapter 16, 223 (Rev. Ed.1979); *see also State v. Thomas*, 2019-Ohio-2795, 139 N.E.3d 1253, ¶ 39 (11th Dist.), quoting *State v. Peacock*, 40 Ohio St. 333, 334 (1883) ("'[w]here one is assaulted in his home, or the home itself is attacked, he may use such means as are necessary to repel the assailant from the house * * * even to the taking of life'").  (Emphasis deleted.).  In 2008, the castle doctrine was codified in R.C. 2901.09(B).  The statute extended the area in which a person had "no duty to retreat" to include both a person's residence and vehicle and the vehicle of an immediate family member.  *See* former R.C. 2901.09(B) (effective Sept. 9, 2008).  The 2021 amendments to R.C. 2901.09, commonly referred to as the "stand-your-ground law," eliminate the duty to retreat when a person is "any place" he or she "is lawfully entitled to be" — not just when a person is lawfully in his or her own residence or vehicle or the vehicle of an immediate family member.  *See* R.C. 2901.09(B); *State v. Estelle*, 2021-Ohio-2636, 176 N.E.3d 380, fn. 5 (3d Dist.).

[4] The state's argument below was incorrect.  The fact that Hurley had been invited into Campbell's vehicle did not affect whether the defendants had a duty to retreat prior to using force against Hurley.  *See* R.C. 2901.09(B); *see also State v. Echevarria*, 8th Dist. Cuyahoga No. 105815, 2018-Ohio-1193, ¶ 33 ("If the victim was lawfully in the defendant's residence at the time the defendant used force against the victim, the defendant would not be entitled to the presumption of self-defense. * * * However, the castle doctrine would still apply, i.e., the defendant would have no duty to retreat from the residence if the defendant were lawfully occupying the residence at the time he or she used the force.").

law." *State v. Griffin,* 141 Ohio St.3d 392, 2014-Ohio-4767, 24 N.E.3d 1147, ¶ 5. Although a trial court has "broad discretion to decide how to fashion jury instructions," the trial court must "'fully and completely give all jury instructions which are relevant and necessary for the jury to weigh the evidence and discharge its duty as the fact finder.'" *State v. White*, 142 Ohio St. 3d 277, 2015-Ohio-492, 29 N.E.3d 939, ¶ 46, quoting *State v. Comen,* 50 Ohio St.3d 206, 553 N.E.2d 640 (1990), paragraph two of the syllabus. Requested jury instructions should "ordinarily be given if they are correct statements of law, if they are applicable to the facts of the case, and if reasonable minds might reach the conclusion sought by the requested instruction." *State v. Adams*, 144 Ohio St.3d 429, 2015-Ohio-3954, 45 N.E.3d 127, ¶ 240. As a general matter, "[a]n appellate court reviews a trial court's refusal to give a requested jury instruction for abuse of discretion." *Id.*, citing *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). However, what law applies and whether a jury instruction correctly states the applicable law are legal issues an appellate court reviews de novo. *See, e.g., State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, 54 N.E.3d 80, ¶ 135. An incorrect or inadequate instruction that misleads the jury or otherwise prejudices the defendant constitutes reversible error. *See, e.g., Simbo Properties v. M8 Realty, L.L.C.*, 2019-Ohio-4361, 149 N.E.3d 941, ¶ 18 (8th Dist.); *Echevarria* at ¶ 28-29.

{¶ 103} I recognize that this court has previously held that the 2021 amendments to R.C. 2901.09 do not apply to offenses that were committed prior to the April 6, 2021 effective date. *See State v. Hurt*, 8th Dist. Cuyahoga No. 110732,

2022-Ohio-2039, ¶ 56-66, and *State v. Claytor*, 8th Dist. Cuyahoga No. 110837, 2022-Ohio-1938, ¶ 77-79. However, those decisions were based, in part, on cases that held that the amendment to R.C. 2901.05 effective March 28, 2019 — which shifted the burden of proof to the state to prove that the defendant did not act in self-defense — did not apply to cases in which the offense was committed prior to the effective date. *See, e.g., Hurt* at ¶ 60-61, citing *State v. Stiltner*, 4th Dist. Scioto No. 19CA3882, 2021-Ohio-959; *Claytor* at ¶ 79, citing *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 24, fn. 2, citing *State v. Koch*, 2019-Ohio-4099, 146 N.E.3d 1238 (2d Dist.).

**{¶ 104}** After *Hurt* and *Claytor* (and the cases upon which they relied) were decided, the Ohio Supreme Court issued its decision in *State v. Brooks*, Slip Opinion No. 2022-Ohio-2478. In *Brooks*, the Ohio Supreme Court held that "the amendment to R.C. 2901.05 (enacted in H.B. 228) is not retroactive—it applies prospectively to all trials occurring after its effective date, regardless of when the underlying alleged criminal conduct occurred." *Id.* at ¶ 21, 23. The court explained that the prospective application of R.C. 2901.05, as amended, was clear from the "plain language" of the statute, i.e., "*at the trial* of a person who is accused of an offense that involved the person's use of force against another * * * the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense * * *." (Emphasis added.) *Id.* at ¶ 20; R.C. 2901.05(B)(1).

**{¶ 105}** Similarly, the plain language of R.C. 2901.09(C) indicates that it is to be applied prospectively to all trials conducted after its effective date, regardless of

when the underlying alleged criminal conduct occurred: "*A trier of fact shall not consider* the possibility of retreat as a factor in determining whether or not a person who used force in self-defense, defense of another, or defense of that person's residence reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." (Emphasis added.) *See also* Comment to 2 *Ohio Jury Instructions*, Section CR 421.21 (Rev. Dec. 4, 2021) ("Because the General Assembly did not explicitly state whether R.C. 2901.09 applies to offenses that were committed before and tried after 4/6/21, the court must decide as a threshold matter whether amended R.C. 2901.09 applies as of the date of the trial or the date of the offense. Because the language in R.C. 2901.09(C) states what a trier of fact shall not consider, the Committee believes this amendment is applicable to all instructions given on and after 4/6/21."); *State v. Gloff*, 2020-Ohio-3143, 155 N.E.3d 42, ¶ 18, 28-29 (12th Dist.) ("It is well settled that a statute is presumed to apply prospectively unless expressly declared to be retroactive."), citing R.C. 1.48. Based on *Brooks* and the express language of R.C. 2901.09(C), I would apply R.C. 2901.09, as amended, in reviewing Duncan's first assignment of error.[5]

{¶ 106} R.C. 2901.09(B) plainly states that "a person has no duty to retreat before using force in self-defense * * * if that person is in a place in which the person lawfully has a right to be." R.C. 2901.09(C) further states, "A trier of fact shall not consider the possibility of retreat as a factor in determining whether or not a person

---

[5] In its appellate brief, the state does not specifically address the issue of whether the 2021 amendments to R.C. 2901.09 applied in this case.

who used force in self-defense * * * reasonably believed that the force was necessary to prevent injury, loss, or risk to life or safety." There was no dispute that Duncan was "in a place in which [he] lawfully ha[d] a right to be" at the time he used force against Hurley. Accordingly, I would find that the trial court erred in instructing the jury that Duncan had a duty to retreat. Because the error in the trial court's instructions precluded the trial court from properly considering Duncan's claim of self-defense or defense of another, the error was prejudicial. Accordingly, I would sustain Duncan's first assignment of error to the extent he claims that the trial court erred in instructing the jury regarding a duty to retreat, vacate Duncan's convictions on Counts 2, 5 and 8 and remand for a new trial on those counts.