[Cite as *State v. Speights*, 2021-Ohio-1194.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

STATE OF OHIO,                               :

    Plaintiff-Appellee,                    :

                                 No. 109733

v.                                           :

LAMAR SPEIGHTS,                              :

    Defendant-Appellant.                   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** April 8, 2021

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-613153-C

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Ryan J. Bokoch and Edward D. Brydle, Assistant Prosecuting Attorneys, *for appellee.*

Rick L. Ferrara, *for appellant.*

EILEEN A. GALLAGHER, J.:

{¶ 1} Defendant-appellant Lamar Speights appeals the trial court's restitution order. He contends that the trial court erred in ordering him to pay

$299,337.83 in restitution because (1) there was no competent, credible evidence of the victims' economic losses, (2) there was no competent, credible evidence that Speights caused these losses and (3) the trial court failed to inquire about "obvious" insurance coverage prior to ordering restitution. For the reasons that follow, we affirm.

**Procedural History and Factual Background**

{¶ 2} On January 13, 2017, a Cuyahoga County Grand Jury indicted Speights and 11 other defendants on numerous counts related to a series of ATM "smash and grab" thefts. Speights was charged in 71 counts relating to 10 separate incidents.

{¶ 3} On February 5, 2019, Speights pled guilty to 17 counts — one count of engaging in a pattern of corrupt activity, four counts of aggravated burglary, one count of attempted aggravated burglary, one count of failure to comply, seven counts of receiving stolen property and three counts of breaking and entering. These counts related to Speights' role in eight different ATM "smash and grabs." Speights also agreed to a recommended aggregate sentence of between 13 and 17 years. In exchange for his guilty pleas, the remaining counts were dismissed.

{¶ 4} There was no agreement regarding restitution as part of the plea agreement. However, at the change-of-plea hearing, the state advised the trial court that it would be seeking an order of restitution as follows:

> While not part of the plea agreement the state has advised defense counsel that we would be seeking — [a]n order of restitution, the state at this time believes that to be what we would be seeking is

$274,435.50. The victims the state would be seeking for would be 7-Eleven, Rite Aid, LoanMax, Drug Mart, Cardtronics, and Carroll Companies; however, that number is not a part of this agreement and we would argue that at sentencing to this Court. * * * I believe the state will have — we will be filing something with the documents from those companies to — before the sentencing for this Court.

The parties agreed that the amount of any restitution would be determined by the trial court at the sentencing hearing. The trial court ordered a presentence investigation report ("PSI") and scheduled the sentencing hearing for the following month.

{¶ 5} At or prior to the sentencing hearing, the state submitted a "restitution packet." The packet was broken down into eight tabbed sections. Each section corresponded to an ATM theft with respect to which Speights had entered guilty pleas. The packet included a chart that identified the date, location, victim(s) and total losses sustained in connection with each of the ATM thefts and the specific counts to which Speights had pled guilty that related to each ATM theft. The tabbed sections contained invoices, repair estimates, portions of police reports, correspondence from victims, photographs and other documentation detailing the property damage and other losses claimed by the victims in each of the incidents, totaling $299,337.83.

{¶ 6} On March 4, 2019, the trial court sentenced Speights to an aggregate prison sentence of 16 years. It imposed five years' mandatory postrelease control and ordered Speights to pay $299,337.83 in restitution, joint and several with his codefendants, as follows: restitution in the amount of $5,509.98 to Drug Mart;

restitution in the amount of $2,000.00 to Carroll Company; restitution in the amount of $15,943.81 to Rite Aid; restitution in the amount of $18,625.00 to Loan Max; restitution in the amount of $51,959.04 to 7-Eleven and restitution in the amount of $205,300.00 to Cardtronics. The restitution amounts ordered corresponded with the restitution amounts requested in the restitution packet. After the trial court imposed its sentence, defense counsel stated: "[A]t this point, Mr. Speights is in agreement with the restitution amount." Speights appealed.

{¶ 7} On October 24, 2019, this court, sua sponte, dismissed the appeal for lack of a final, appealable order because the trial court had failed to impose a sentence on Count 56, one of the counts to which Speights had pled guilty. On March 12, 2020, the trial court held a sentencing hearing on Count 56. The trial court imposed a sentence of 18 months on Count 56 to run concurrent with the sentences it had previously imposed on the other counts. No restitution was ordered as to Count 56.

{¶ 8} Speights, once again, appealed. He raises the following assignment of error for review:

> The trial court erred in ordering restitution for crimes without receiving competent, credible evidence of loss or inquiring as to insurance coverage.

**Law and Analysis**

{¶ 9} Speights argues that the restitution ordered by the trial court should be vacated or reduced because (1) there was no competent, credible evidence of the victims' economic losses, (2) there was no competent, credible evidence that

Speights caused these losses and (3) the trial court failed to inquire about "obvious" insurance coverage prior to ordering restitution. Speights further contends that the state's restitution packet was insufficient to support the trial court's restitution order because (1) it "does not show damages to a company named the Carroll Company"; (2) it "does not show payment of the invoices in the form of a cancelled check or bank wire" and (3) it "contains bare information regarding Cardtronics in the form of an excel spreadsheet." He asserts that the trial court "acted unreasonably in taking the State's evidence at face value, without critical examination."

{¶ 10} R.C. 2929.18(A)(1) governs restitution. Under R.C. 2929.18(A)(1), a trial court may order restitution "to the victim of the offender's crime or any survivor of the victim" in an amount that does "not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." The court may base the amount of restitution imposed "on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.18(A)(1).

{¶ 11} The amount of the restitution imposed "'must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty.'" *State v. Johnson*, 2018-Ohio-3670, 119 N.E.3d 914, ¶ 55 (8th Dist.), quoting *State v. Gears*, 135 Ohio App.3d 297, 300, 733 N.E.2d 683 (6th Dist.1999); *see also State v. Mills*, 8th Dist. Cuyahoga No. 107233, 2019-Ohio-706, ¶ 33 ("[P]rior to imposing restitution, a trial court must

determine the amount of restitution to a reasonable degree of certainty, ensuring that the amount is supported by competent, credible evidence."); *State v. Lenard*, 8th Dist. Cuyahoga No. 105998, 2018-Ohio-3365, ¶ 70 ("Although the decision to impose restitution is discretionary with the court, its determination of the amount of loss is a factual question that we review under the competent, credible evidence standard."). The trial court must also ensure that the amount of restitution sought is "reasonably related to the loss suffered" by the victim. *See, e.g., State v. Pierce*, 8th Dist. Cuyahoga No. 107752, 2019-Ohio-3762, ¶ 29; *State v. Waiters*, 191 Ohio App.3d 720, 2010-Ohio-5764, 947 N.E.2d 710, ¶ 20 (8th Dist.); *see also State v. McLaurin*, 8th Dist. Cuyahoga No. 103068, 2016-Ohio-933, ¶ 13 ("Prior to ordering restitution * * * a sentencing court must engage in a 'due process ascertainment that the amount of restitution bears a reasonable relationship to the loss suffered.'"), quoting *State v. Borders*, 12th Dist. Clermont No. CA2004-12-101, 2005-Ohio-4339, ¶ 36. A trial court must conduct a hearing to determine the amount of restitution only if "the offender, victim, or survivor disputes the amount." R.C. 2929.18(A)(1).

{¶ 12} Speights did not object to the trial court's restitution order at the sentencing hearing. Where, as here, a defendant fails to object to an order of restitution or the amount of restitution below, the defendant forfeits all but plain error. *See, e.g., State v. Keslar*, 8th Dist. Cuyahoga No. 107088, 2019-Ohio-540, ¶ 21; *State v. Nickens*, 8th Dist. Cuyahoga No. 104670, 2017-Ohio-1448, ¶ 4.

{¶ 13} Crim.R. 52(B) provides that "plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Plain error requires a showing that there was "an error, that the error was plain or obvious, that but for the error the outcome of the proceeding would have been otherwise, and that reversal [is] necessary to correct a manifest miscarriage of justice." *State v. Buttery*, Slip Opinion No. 2020-Ohio-2998, ¶ 7, *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 2. The party asserting plain error "bears the burden of proof to demonstrate plain error on the record." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22, citing *Quarterman* at ¶ 16. "[A]ppellate courts are to notice plain error only in 'exceptional circumstances' in order to prevent 'a manifest miscarriage of justice.'" *State v. Keslar*, 8th Dist. Cuyahoga No. 107088, 2019-Ohio-540, ¶ 21, quoting *State v. Long*, 53 Ohio St.2d 91, 95, 372 N.E.2d 804 (1978).

{¶ 14} Speights, however, has not even asserted that plain error exists except with respect to the trial court's alleged failure to inquire and reduce the restitution amount by any insurance proceeds covering the victims' losses. Where a defendant does not argue plain error on appeal, the appellate court need not consider the issue. *See, e.g., State v. Sims*, 10th Dist. Franklin No. 14AP-1025, 2016-Ohio-4763, ¶ 11 (appellant did not meet burden of demonstrating error on appeal where she only preserved plain error and did not argue the existence of plain error on appeal). "An appellate court is not obliged to construct or develop arguments to support a defendant's assignment of error and 'will not "guess at undeveloped claims on

appeal.'"" *State v. Jacinto*, 2020-Ohio-3722, 155 N.E.3d 1056, ¶ 56 (8th Dist.), quoting *State v. Piatt*, 9th Dist. Wayne No. 19AP0023, 2020-Ohio-1177, ¶ 39, quoting *McPherson v. Goodyear Tire & Rubber Co.*, 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31; *see also State v. Collins*, 8th Dist. Cuyahoga No. 89668, 2008-Ohio-2363, ¶ 91 ("'[I]t is not the duty of this Court to develop an argument in support of an assignment of error if one exists.'"), quoting *State v. Franklin*, 9th Dist. Summit No. 22771, 2006-Ohio-4569, ¶ 19; *State v. Patton*, 1st Dist. Hamilton No. C-190694, 2021-Ohio-295, ¶ 25 ("'An appeals court will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal.'"), quoting *State v. Jones*, 2018-Ohio-4754, 124 N.E.3d 439, ¶ 46 (1st Dist.); *State v. Hamilton*, 9th Dist. Lorain No. 17CA011238, 2019-Ohio-1829, ¶ 8 (appellate court "'will not sua sponte fashion an unraised plain error argument and then address it'"), quoting *State v. Thomas*, 2015-Ohio-5247, 54 N.E.3d 732, ¶ 9 (9th Dist.). Even if we were to consider plain error with respect to each of the arguments Speights makes on appeal, we would find no plain error in the trial court's decision to order restitution in the amount of $299,337.83.

{¶ 15} Speights did not dispute the amount of restitution at the sentencing hearing. The trial court, therefore, was not required to hold a hearing on the issue and could "base the amount of restitution" imposed on "an amount recommended by the victim, * * * estimates or receipts indicating the cost of repairing or replacing property, and other information." R.C. 2929.18(A)(1). Evidence of "cancelled checks," "bank wires" or "independent document[ation]" of a victim's claimed losses

is not required to support an order of restitution where the amount of restitution is not disputed.

{¶ 16} A review of the record shows that the state presented competent, credible evidence from which the trial court could discern both the amount of restitution to a reasonable degree of certainty and that the losses for which restitution was ordered were a direct and proximate result of the commission of offenses to which Speights pled guilty. As detailed above, the amount of losses and damages claimed by each victim was supported by documentation, including invoices, repair estimates, portions of police reports, correspondence from the victims and photographs detailing the damages and losses they sustained. These damages and losses included costs to repair the stores damaged during the incidents, damaged merchandise, the value of stolen or damaged ATMs and stolen cash. The damages and losses resulting from each of the ATM thefts at issue were linked to the specific counts to which Speights pled guilty.

{¶ 17} Although Speights contends that there is no documentation of "damages to a company named the Carroll Company," an investigative report from the Avon Police Department, which is included in section 1b of the restitution packet, identifies "Carroll Companies" as one of the victims of a "smash and grab" at a Drug Mart on February 13, 2015 and reports $2,000 in damage to an ATM machine that was "damaged as a result of being torn out of [the] store front."

{¶ 18} Speights also surmises that because a number of the victims to which restitution was ordered were large, national corporations, "it was likely" that at least

some portion of the victims' damages and losses would have been covered by insurance. If a victim has insurance that reimbursed the victim for a loss that occurred as a result of an offender's criminal conduct, "the victim has not suffered an economic loss for the purposes of imposing restitution." *Nickens*, 2017-Ohio-1448, at ¶ 8.

{¶ 19} There is, however, nothing in the record indicating that any of victims had insurance coverage that might cover all or part of the damages or losses at issue. We cannot find plain error based on the trial court's failure to consider potential insurance proceeds before ordering restitution where "nothing in the record affirmatively demonstrates that restitution was imposed for any amount already recovered through insurance proceeds." *Nickens* at ¶ 9. If a victim "omits any reference to potential insurance proceeds, that omission, or the trial court's failure to inquire into the existence of insurance, is not presumptively prejudicial error." *Id.* at ¶ 6, 8-9 (rejecting defendant's "faulty presumption" that because victim was a large corporation, it had insurance coverage and received insurance proceeds "for at least part of what was lost"; trial court did not commit plain error where the amount of restitution was based on competent, credible evidence and nothing in the record "affirmatively demonstrate[d] that restitution was imposed for any amount already recovered through insurance proceeds"); *see also In re A.S.*, 8th Dist. Cuyahoga No. 107202, 2019-Ohio-1362, ¶ 22, fn.2 (finding no plain error due to trial court's failure to consider the possibility of insurance coverage for the cost of repairs made to gas

station where there was nothing in the record suggesting that victim had insurance that might cover all or part of the cost of repairs).

{¶ 20} Here, as in *Nickens*, (1) the record demonstrates that the trial court considered all that was required under R.C. 2929.18(A)(1), (2) the amount of restitution ordered was based on competent, credible evidence and (3) nothing in the record affirmatively demonstrates that restitution was ordered for any amount recovered through insurance proceeds. *Nickens* at ¶ 9. Furthermore, in this case, after the state submitted its restitution packet, defense counsel expressly stated: "[A]t this point, Mr. Speights is in agreement with the restitution amount." Accordingly, there was no plain error.

{¶ 21} Speights' assignment of error is overruled.

{¶ 22} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry out this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, JUDGE

MARY J. BOYLE, A.J., and
LISA B. FORBES, J., CONCUR