[Cite as *In re N.A.-S.*, 2025-Ohio-5050.]

# COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE N.A.-S., ET AL.                 :

Minor Children                         :

                                               No. 115191
[Appeal by Mother]                 :

                                               :

---

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 31, 2025

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD24901320, AD24901321, AD24901322, AD24901323, and
AD24901324

---

### *Appearances:*

David S. Bartos, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

ANITA LASTER MAYS, J.:

{¶1} In this appeal, defendant-appellant Mother ("Mother") of N.A-S., L.A-S., E.A-S., B.A-S., and J.A-S. ("the children") appeals the trial court's decision

granting permanent custody of the children to the Cuyahoga County Division of Children and Family Services ("CCDCFS"). We affirm the trial court's decision.

## I. Procedural History

{¶2} On February 9, 2024, CCDCFS filed a complaint alleging that the children were abused, neglected, and dependent and requested a predispositional order of temporary custody. On February 12, 2024, the magistrate found probable cause existing for the removal of the children and granted CCDCFS's motion for predispositional custody, committed the children to the temporary custody of CCDCFS, and ordered a case plan to be filed within 30 days.

{¶3} After several pretrials, the adjudication hearing was held on April 17, 2024. CCDCFS made an oral motion to amend the complaint. Mother and Father through counsel, stipulated to the facts of the amended complaint.[1] The children were adjudicated abused and neglected. On April 25, 2024, at the disposition hearing, the magistrate terminated the prior emergency custody order and committed the children to the temporary custody of CCDCFS. The court accepted the case plan that was submitted. The trial court adopted and approved the adjudication and disposition orders of the magistrate on May 3, 2024, and    May 13, 2024, respectively.

{¶4} After several motions were filed regarding visitation, amended case plans, and determination on placement in a qualified residential treatment

---

[1] Father did not appeal and is not a party herein.

program, on December 16, 2024, CCDCFS filed a motion to modify temporary custody to permanent custody. On May 5, 2025, Mother filed a motion for first and second extension of temporary custody. On May 12, 2025, a trial was held on the motions. After trial, the trial court terminated Mother's parental rights and ordered the children to be committed to the permanent custody of CCDCFS. On June 2, 2025, Mother filed an appeal.

## II. Facts

{¶5} At trial, Lauren Hopkins ("Hopkins"), a child protection specialist with CCDCFS and case worker for the children testified that CCDCFS was called because the children missed numerous hours of school. An investigation was launched after one of the children wrote a note detailing Father's sexual abuse. During CCDCFS's investigation, they discovered that two of the children had been sexually abused by Father. CCDCFS created a safety plan for Mother to follow, and Father was not allowed in the home.

{¶6} After CCDCFS learned that Mother violated the safety plan by letting Father live back in the home and drive the children to the child advocacy center for the children's interview, they filed a motion for temporary custody of the children. Father was found guilty of various counts of rape and gross sexual imposition, and mother was found guilty of attempted child endangerment. Father was sentenced to 15 years to life in prison and is currently incarcerated. Father's paternity was confirmed for the children.

{¶7} A case plan was developed with the goal of reunification between Mother and the children. The case plan included parenting classes, mental-health counseling, and Mother providing for the basic needs of the children. Hopkins testified that Mother completed parenting classes but had not demonstrated that she benefitted from the program. Mother also attended five or six mental-health services sessions but was still unable to provide for the basic needs of the children.

{¶8} During Hopkins's testimony, several recordings of phone calls between Mother and incarcerated Father were played for the court demonstrating that Mother continues to support Father, help with his appeal, and state that she wants to get back with him and the children. Hopkins also testified that Mother continues to state that she does not believe the children when they accused Father of sexually abusing them, although he was found guilty.

{¶9} Mother testified at trial that she was still in contact with Father and believed that Father is innocent. However, Mother testified that she would cut off contact with Father to regain custody of the children. Mother also testified that she believes the children have been manipulated to accuse and testify against Father. Further, Mother maintained that she was not guilty of endangering her children, even though she pleaded guilty.

{¶10} After Mother's testimony, Christian M. Joliat ("Joliat"), the guardian ad litem ("GAL") for the children submitted her report and recommendation to the court. Joliat, stated: "One of my main concerns is that I saw evidence of serious physical abuse, scarring all over their bodies that hasn't been addressed, and I

mean at this point I'm recommending permanent custody." Tr. 135-136. Joliat

continued, stating: "It's my opinion that I don't think that they can be unified."

Tr. 136.

{¶11} At the end of the trial, the trial court stated:

I am prepared to rule at this time. I'm gonna go forward with my ruling. This Court may grant permanent custody of the children to Cuyahoga County Division of Children and Family Services if it is found by clear and convincing evidence that any of the following apply, and this is gonna be in reference to all five children in all five cases.

That Children and Family Services has proven by clear and convincing evidence that the children are not abandoned or orphaned and have been in the temporary custody for 12 or more months of consecutive 22-month period and the children cannot be placed with either of the children's parents within a reasonable time or should not be placed with the child's parents.

That the Court has considered the best interests of the children and the D-1 factors and the Guardian ad Litem recommendation in this matter.
I am going to find that the following factors apply. Some apply to mom, some apply to both, some apply to dad.

The following E factors apply.

E-1 applies to mom.
E-4 applies to mom.
E-5 applies to dad.
E-6 applies to dad and mom.
E-7(B) applies to dad.
I also believe E-12 applies to dad, and E-14 applies to mom.

The Court will find that reasonable efforts were made by the Cuyahoga County Department of Children and Family Services to prevent the removal of the children, to eliminate the continued removal of the children from the home or make it possible for the children to return home.

Tr. 147-148.

{¶12} The trial court continued, speaking directly to Mother, stating: "And ma'am, you can blame the Agency and you can blame me, and you can blame your attorney, but you can look on that screen and the choices that you've made since then and that is why you lost those individuals." Tr. 150-151.

{¶13} On May 21, 2025, the trial court issued journal entries on the children, granting permanent custody to CCDCFS. Mother filed this appeal, assigning three errors for our review:

1. The trial court committed prejudicial error when it failed to appoint separate counsel for the children when the evidence adduced at trial showed that all of the children wished to visit with appellant.

2. The trial court committed prejudicial error in denying appellant's motion for in-camera interviews of the children.

3. The trial court's decision to grant permanent custody of the appellant's children to the CCDCFS was not supported by clear and convincing evidence and thus was not supported by the manifest weight of the evidence and sufficiency of the evidence.

## III. Separate Counsel

{¶14} In Mother's first assignment of error, she argues that the trial court erred by not appointing separate counsel for the children. Mother further argues that the GAL did not testify as to the children's wishes toward reunification and that all of the children's wishes in regard to reunification should have been stated. Mother did not raise this issue at trial and has waived all but plain error for appeal. "Plain error exists when there is 'an obvious defect in the trial proceedings that

affected the defendant's substantial rights, meaning that the trial court's error must have affected the outcome of the trial.'" *State v. Yantis*, 2023-Ohio-3820, ¶ 23 (2d Dist.), quoting *State v. Petticrew*, 2023-Ohio-159, ¶ 18 (2d Dist.), citing *State v. Payne*, 2007-Ohio-4642, ¶ 16. *See, e.g., In re S.H.*, 2014-Ohio-4476, ¶ 12 (8th Dist.). "'Plain error is not favored and is only applicable in rare cases where the error seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *In re A.G.*, 2018-Ohio-289, ¶ 7 (8th Dist.), quoting *S.J. v. J.T.*, 2011-Ohio-6316, ¶ 8 (6th Dist.).

{¶15} However, Mother did not argue plain error on appeal. "Where a defendant does not argue plain error on appeal, the appellate court need not consider the issue." *State v. Speights*, 2021-Ohio-1194, ¶ 14 (8th Dist.). *See, e.g., State v. Sims*, 2016-Ohio-4763, ¶ 11 (10th Dist.) (appellant did not meet burden of demonstrating error on appeal where she only preserved plain error and did not argue the existence of plain error on appeal). "'An appellate court is not obliged to construct or develop arguments to support a defendant's assignment of error and "will not" guess at undeveloped claims on appeal.'" (Cleaned up.) *Id.*, quoting *State v. Jacinto*, 2020-Ohio-3722, ¶ 56 (8th Dist.). *See also State v. Collins*, 2008-Ohio-2363, ¶ 91 (8th Dist.) (it is not the duty of this court to develop an argument in support of an assignment of error if one exists); *State v. Patton*, 2021-Ohio-295, ¶ 25 (1st Dist.) ("An appeals court will not construct a claim of plain error on a defendant's behalf if the defendant fails to argue plain error on appeal.").

**{¶16}** Therefore, Mother's first assignment of error is overruled.

## IV. In Camera Interviews

**{¶17}** In Mother's second assignment of error, she argues that the trial court erred when it denied her motion for in camera interviews of the children. On February 19, 2025, Mother filed a motion for an in camera interview of the children, which was denied on April 30, 2025. Mother did not mention the denial at trial.

**{¶18}** Mother's argument is analogous to the argument made in *Miracle v. Allen*, 2006-Ohio-5063 (9th Dist.), where Father filed a motion for an in camera interview of the parties' minor child. *Id*. at ¶ 3. The trial court in that case held a hearing on the parties' motions and denied Father's motion. Father made no mention of his motion for an in camera interview of the parties' child at any time during the trial court's hearing. *Id*.

**{¶19}** Father appealed the trial court's decision to deny his motion, and because Father failed to raise the issue of the trial court's failure to interview the minor child at a time when the trial court could have corrected the error, the appellate court determined that Father waived the issue for purposes of appeal. *Id*. at ¶ 6.

**{¶20}** Likewise, in our instant case, Mother failed to raise the issue of the trial court's denial of her motion at trial. "As the Supreme Court held in *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 210 (1982), 'the fundamental rule is that an

appellate court will not consider any error which could have been brought to the trial court's attention and hence avoided or otherwise corrected.'" *Id.*

{¶21} Additionally, "R.C. 3109.04(F)(1), regarding parental rights in shared parenting, does require an in camera interview in order to consider the wishes of the child. R.C. 3109.04(F)(1)(b)." *In re F.B.*, 2022-Ohio-499, ¶ 51 (12th Dist.). However, "R.C. 2151.414(D), concerning permanent custody, provides that the court may consider the wishes of the child if expressed through the guardian ad litem. R.C. 2151.414(D)(1)(b)." *Id.* We find that the issue of the denial of the in camera interviews with the children has been waived.

{¶22} Therefore, Mother's second assignment of error is overruled.

## V. Permanent Custody

{¶23} In Mother's third assignment of error, she argues that the trial court's decision to grant permanent custody of her children was not supported by clear and convincing evidence and thus was not supported by the manifest weight of the evidence.

{¶24} Our responsibility in reviewing cases involving the termination of parental rights and the award of permanent custody is taken very seriously. Ohio courts have long recognized that termination of parental rights is "the family law equivalent of the death penalty in a criminal case." *In re D.A.*, 2007-Ohio-1105, ¶ 10. Parents have a constitutionally protected, fundamental interest in the management, custody, and care of their children. *Troxel v. Granville*, 530 U.S. 57, 66 (2000). The right to raise one's own child is "'an essential and basic civil right.'"

*In re N.B.*, 2015-Ohio-314, ¶ 67 (8th Dist.), quoting *In re Hayes*, 79 Ohio St.3d 46, 48 (1997). However, this right is not absolute. It is "'always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re L.D.*, 2017-Ohio-1037, ¶ 29 (8th Dist.), quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979).

**{¶25}** "The proper appellate standards of review to apply in cases involving a juvenile court's decision under R.C. 2151.414 to award permanent custody of a child and to terminate parental rights are the sufficiency-of-the-evidence and/or manifest-weight-of-the-evidence standards, as appropriate depending on the nature of the arguments that are presented by the parties." *In re Z.C.*, 2023-Ohio-4703, ¶ 18. When reviewing for manifest weight, the appellate court weighs and resolves conflicts in the evidence, considers witness credibility, and determines whether the factfinder clearly lost its way, resulting in a manifest miscarriage of justice. *In re Z.C.* at ¶ 14, citing *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.

**{¶26}** R.C. 2151.414(B)(1) outlines the two-prong test a trial court must perform before granting an agency's motion for permanent custody of a child. The statute requires the court to determine, by clear and convincing evidence, both: (1) that at least one of the conditions outlined in R.C. 2151.414(B)(1)(a) through (e) applies; and (2) that an award of permanent custody is in the child's best interest. *In re A.M.*, 2020-Ohio-5102, ¶ 18; *In re C.F.*, 2007-Ohio-1104, ¶ 22.

**{¶27}** Regarding the first prong, R.C. 2151.414(B)(1) states in relevant part:

(a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.

(b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

**{¶28}** In the instant case, Mother challenges the trial court's finding only under R.C. 2151.414(B)(1)(a), that the children could not or should not be placed with either parent within a reasonable time. Mother argues that CCDCFS did not make reasonable efforts to reunify the children with her. We disagree.

{¶29} The trial court's findings under R.C. 2151.414(B)(1)(a) are supported by clear and convincing evidence. Furthermore, the record contains no clear and convincing evidence that either parent could provide adequate care for the children's health, welfare, and safety. First, Father is currently incarcerated for sexually abusing two of the children. Second, Mother was referred to parenting classes. However, according to the case worker's testimony, Mother has not demonstrated any benefits of services. Additionally, Mother has remained in contact with Father and has stated to Father that her goal was to reunify the entire family, despite Father's convictions for rape and gross sexual imposition of two of the children. Mother violated the original case plan that forbade Father from seeing the children. Mother testified that the children's testimonies against their Father were manipulated, and she did not believe the children's accusations against Father.

{¶30} We note that a finding under any one subsection of R.C. 2151.414(B)(1) is sufficient to meet the first prong of the permanent-custody test. We determine that the trial court did not err when it concluded that the first prong of the permanent custody test had been met and therefore, is not against the manifest weight of the evidence.

{¶31} The "best interest determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315 (8th Dist.). "'An appellate court will not reverse a juvenile court's termination of parental rights and award of permanent custody to an agency if the judgment is supported by clear and

convincing evidence.'" *In re I.E.*, 2024-Ohio-5487, ¶ 23 (8th Dist.), quoting *In re M.J.*, 2013-Ohio-5440, ¶ 24 (8th Dist.).

**{¶32}** "Only one of the four factors must be present for the first prong of the permanent custody analysis to be satisfied.  Once the juvenile court ascertains that one of the four factors listed in R.C. 2151.414(B)(1) is present, then the court proceeds to an analysis of the child's best interest."  *In re J.B.*, 2013-Ohio-1705, ¶ 80-81 (8th Dist.).

**{¶33}** The trial court determined that the children could not be placed within a reasonable time or should not be placed with either parent because there is evidence that one or more factors in division (E) of R.C. 2151.414 exist:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

(6) The parent has been convicted of or pleaded guilty to an offense under division (A) or (C) of section 2919.22 or under section 2903.16,

2903.21, 2903.34, 2905.01, 2905.02, 2905.03, 2905.04, 2905.05, 2907.07, 2907.08, 2907.09, 2907.12, 2907.23, 2907.25, 2907.31, 2907.32, 2907.321, 2907.322, 2907.323, 2911.01, 2911.02, 2911.11, 2911.12, 2919.12, 2919.24, 2919.25, 2923.12, 2923.13, 2923.161, 2925.02, or 3716.11 of the Revised Code, and the child or a sibling of the child was a victim of the offense, or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.

(7) The parent has been convicted of or pleaded guilty to one of the following:

> (d) An offense under section 2907.02, 2907.03, 2907.04, 2907.05, or 2907.06 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to an offense described in those sections and the victim of the offense is the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense;

(12) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.

(14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.

(16) Any other factor the court considers relevant.

Journal Entries Nos. AD24901320, AD24901321, AD24901322, AD24901323, and AD24901324 (May 21, 2025).

{¶34} In the journal entries and at trial, the trial court specified which factors applied to either Mother or Father, stating: "The following E factors apply.

E-1 applies to mom. E-4 applies to mom. E-5 applies to dad. E-6 applies to dad and mom. E-7(B) applies to dad. I also believe E-12 applies to dad, and E-14 applies to mom." Tr. 147.

{¶35} The record demonstrates that the trial court considered the statutory factors. CCDCFS provided a case plan for Mother, which was not completed. Mother does not have a permanent home for her and the children to reside. Father is incarcerated for an offense he committed against two of the children. Both Mother and Father were convicted of offenses where their children were the victims. Father was incarcerated at the time of the filing of the motion for permanent custody and will not be available to care for the children at least eighteen months after the filing. Mother has shown an unwillingness to provide basic necessities for the children and an unwillingness to prevent the children from suffering from emotional, mental, or sexual abuse.

{¶36} Upon review of the record, we find clear and convincing evidence that the children should not or could not be placed with either parent within a reasonable time and the trial court's award of permanent custody to the agency was in the children's best interest. We cannot conclude that the trial court's findings regarding the first and second prongs were against the manifest weight of the evidence.

{¶37} Therefore, Mother's third assignment of error is overruled.

{¶38} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EMANUELLA D. GROVES, P.J., and
DEENA R. CALABRESE, J., CONCUR