[Cite as *State v. Normile*, 2026-Ohio-1052.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                               :

    Plaintiff-Appellee,          :

                                 No.  115477

    v.                           :

DANIEL NORMILE,                              :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  AFFIRMED
**RELEASED AND JOURNALIZED:**  March 26, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-25-699920-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Lucas Kirkland, Assistant Prosecuting Attorney, *for appellee*.

Michael P. Maloney, *for appellant*.

EMANUELLA D. GROVES, J.:

{¶ 1}  Defendant-appellant Daniel Normile ("Normile") appeals his convictions for strangulation and domestic violence following a bench trial.  Upon review, we affirm Normile's convictions.

## I.       Facts and Procedural History

{¶ 2}    In March 2025, Normile was indicted in a three-count indictment for offenses allegedly committed in November 2024 against his wife, V.H.  Count 1 charged Normile with strangulation in violation of R.C. 2903.18(B)(2), a third-degree felony.  Count 2 charged him with strangulation in violation of R.C. 2903.18(B)(3), a fourth-degree felony, with a furthermore clause that the victim was a family or household member.  Count 3 charged Normile with domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor.  Normile pleaded not guilty and waived his right to a jury trial.  The matter proceeded to a bench trial in October 2024.

{¶ 3}    The following evidence was presented by the State.  First, V.H. offered testimony about her "short-lived" relationship with Normile, against whom she filed for an annulment.  V.H. also offered testimony about the events that transpired in November 2024 while the couple was married.  V.H. testified that, on the day of the incident at issue, she looked at Normile's cell phone and saw that "he received many messages from people he invited to [their] home to have sexual relations with."  V.H. saw similar messages before and learned that he was inviting "strangers" into their home.  V.H. was concerned for her physical health and safety.  As a result, V.H. told Normile that she did not want to live with him anymore and he had until the end of the week to move out.

{¶ 4}    According to V.H., Normile became enraged, yelled, and tried to defend himself against the accusations.  Normile then lunged for V.H.'s cell phone,

which was in her hand. After giving Normile her phone and commenting about its contents, Normile physically reacted:

> [Normile] lunged at me with both of his hands towards my throat. We fell to my bed . . . . He had both of his hands around my neck and pressed down firmly and I lost consciousness.
> . . .
>
> I was terrified. I thought — I knew I was going to die. . . . And I thought in that split second that I still had consciousness that I would do whatever it takes to stay alive.
>
> . . .
>
> After — when I regained consciousness, it was to him hitting me in the face with a closed fist directly in my eye.
>
> . . .
>
> He tried as hard as he could to get everywhere in my — in my eye area. I have problems with my eyes. They get swollen very easily and he knows that and he was trying to keep me away from doing anything public.

V.H. testified that Normile was on top of her for at least a minute, although it could have been longer since she lost consciousness. After regaining consciousness, V.H. experienced dizziness. When V.H. told Normile that she was going to call the police, he left right away.

{¶ 5}　V.H. called 9-1-1 and the responding police officers interviewed her and took photographs. V.H. identified those photographs, which were taken shortly after the incident. V.H. testified that the photographs revealed that she was "visibly upset and swollen" and　depicted bruising that began "even just after the event occurred" around her eyes, face, and neck:

Daniel's right-handed, so you can tell that the majority of the bruising has started on my left side. I'm swollen around both of the orbital bones around both of my eyes as you can tell. And the swelling has started on my right side as well. You can also tell that there's scratching and pre-bruising that has started around my neck around where he pressed on my airway.

. . .

[Y]ou can tell where he has forcefully pressed down to try to restrict my airway. You can tell that the bruising has started around the bottom part of my neck and he even went as far up as he possibly could so he can get everywhere in my neck to damage my airway.

V.H. also sustained scratches to her chest and around her clavicle bones. V.H. went to a pharmacy's "minute clinic" immediately after to purchase a topical gel for her bruises. V.H. testified that the bruises "stayed on [her body] for a while" and her airway was "damaged" as a result of the incident.

{¶ 6} On cross-examination, V.H. testified that she learned about Normile's infidelity after they were married and filed for an annulment at the beginning of August 2024, before the altercation at issue took place. V.H. also offered testimony about prior incidents where Normile verbally threatened her. After one incident, V.H. was taken to the police station. Despite these prior disputes and the annulment filing, V.H. allowed Normile to move in with her at the end of August 2024. V.H. also admitted that she told prosecutors she was disappointed with the original domestic-violence charge because she wanted Normile to be charged with a felony. V.H. estimated that Normile hit her 15 times but could not be certain since she lost consciousness. V.H. did not take photographs a week later to show how the bruising developed.

{¶ 7} Next, Lakewood Police Department's Patrol Officer Connor Abt ("Officer Abt") testified that he and three other officers responded to a call from a female reporting that her husband hit her. When Officer Abt arrived at the scene, V.H. was crying and very upset. When Officer Abt began offering testimony about what V.H. told him in regard to the incident, defense counsel objected but subsequently withdrew the objection. Officer Abt testified that V.H. explained that she had gone through Normile's cell phone and found evidence that he was cheating on her. Officer Abt asked whether the argument became physical, and V.H. told him that Normile "slammed her to the bed by her throat and then hit her in the face with a closed fist." Officer Abt observed red marks along V.H.'s chest and bruising above her left eye. According to Officer Abt, V.H. declined medical care and photographs were taken of her injuries. On cross-examination, Officer Abt testified that he did not believe it looked like V.H. was punched 15 times in the head.

{¶ 8} Lakewood Police Department's Patrol and Field Training Officer Jared Yoe ("Officer Yoe") also responded to the call, spoke to V.H., and "gathered all the details and the facts about what she alleged happened." Without any objection from the defense, Officer Yoe offered the following testimony about what V.H. told him:

> She found some text messages about her husband cheating on her. When she confronted him about it, he tried taking her phone and then he grabbed her by the throat and threw her on the bed. . . . She stated her husband had struck her with a closed fist above her left eye.

Officer Yoe further testified that V.H. was visibly upset and crying. Officer Yoe also observed "some redness around her neck and a red mark above her left eye." Photographs of V.H.'s face and neck were taken, and follow-up questions about the couple's history were asked. According to Officer Yoe, "[V.H.] stated that there had been incidents of violence and threats of violence in the past as well." The information obtained by the responding officers was documented in a report written by Officer Yoe and his trainee. Officer Yoe explained that Normile was later located, detained, and placed under arrest for strangulation and domestic violence.

{¶ 9} At the conclusion of Officer Yoe's testimony, the State rested and admitted the six photographs taken by responding officers of V.H.'s injuries without objection. The defense moved for acquittal under Crim.R. 29. The trial court granted the motion as to Count 1, strangulation in violation of R.C. 2903.18(B)(2), and denied the motion as to Counts 2 and 3, strangulation in violation of R.C. 2903.18(B)(3) and domestic violence.[1]

{¶ 10} The defense then presented its case, and Normile testified on his own behalf. Normile offered testimony about the couple's relationship, their prior disputes, and the November 2024 altercation. Normile explained that V.H. found messages on his phone from a woman he used to date. Normile testified that V.H. "was getting in my face and trying to stop me [from leaving] and wouldn't let me go

---

[1] R.C. 2903.18(B)(2) is a more severe charge, requiring proof beyond a reasonable doubt that the defendant knowingly created "a substantial risk of *serious* physical harm to another by means of strangulation or suffocation." (Emphasis added.) In comparison, R.C. 2903.18(B)(3) requires only "a substantial risk of physical harm."

and kind of barraging me verbally and just blocking my way." According to Normile, V.H. threatened to "throw everything [he] owned away," he grabbed V.H.'s phone as "collateral," and she initiated the struggle that ensued. Normile testified: "[S]he grabbed [her phone] back, ripped it out of my hands, and that's when it hit her on the head and then she said — that's where she said, 'You hit me.' And I was like — then she's, 'I'm calling the police.'" Normile left once V.H. threatened to call the police and stated, "[B]ut I was trying [to] leave the whole entire time." While Normile admitted to grabbing V.H.'s phone from her, he denied punching her 15 times, striking her, and choking her. Finally, Normile testified that he was cooperative with police.

{¶ 11} On cross-examination, Normile acknowledged that police were called multiple times in a short span and the couple's disputes continued to escalate. Normile said he was not mad or angry when V.H. accused him of cheating but was "worried about [his] stuff." Normile reiterated that he grabbed V.H.'s phone "to use it as collateral" without thinking. Normile claimed that "it all happened really fast" and denied being physical with V.H., getting angry, or escalating the confrontation. Normile admitted to leaving the house once V.H. called the police, claiming he was in disbelief. Normile testified that he "didn't see anything" in the photographs taken by police officers, aside from V.H. looking "flushed all over her body." When the State's exhibits were shown to Normile, he stated: "These don't look like the pictures I was provided. They look done up." While Normile acknowledged seeing some redness in the photos, he denied seeing any swelling.

{¶ 12} Following Normile's testimony, the defense rested and renewed its Crim.R. 29 motion for acquittal of the remaining counts — Counts 2 (strangulation) and 3 (domestic violence).  The trial court denied Normile's motion, heard closing arguments, and deliberated.  Ultimately, the trial court found Normile guilty of Counts 2 and 3 as charged in the indictment.  The trial court imposed two years of community control and a fine on Count 2 and a suspended 180-day jail sentence on Count 3.

{¶ 13} Normile appeals, raising two assignments of error for review.

**Assignment of Error No. 1**

The trial court erred in denying [Normile's Crim.R.] 29 motion as to Counts 2 and 3 where the State presented insufficient evidence on the elements of strangulation and domestic violence.

**Assignment of Error No. 2**

The trial court erred in admitting the victim's out-of-court hearsay statements.

## II. Law and Analysis

### A. Denial of Crim.R. 29 Motion

{¶ 14} In his first assignment of error, Normile contests the trial court's denial of his Crim.R. 29 motions for acquittal as to Counts 2 and 3.

{¶ 15} Crim.R. 29(A) provides:

The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses.

Since a Crim.R. 29 motion questions the sufficiency of the evidence, we employ the same standard of review to the trial court's ruling as we apply when determining whether the evidence presented at trial was sufficient. *State v. McQuisition*, 2024-Ohio-3011, ¶ 24 (8th Dist.), citing *Fairview Park v. Peah*, 2021-Ohio-2685, ¶ 37 (8th Dist.).

{¶ 16} A challenge to the sufficiency of the evidence supporting a conviction requires a reviewing court to determine whether the State has met its burden of production at trial. *State v. Thompkins,* 78 Ohio St.3d 380, 390 (1997). When reviewing a sufficiency challenge, an appellate court "examine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier-of-fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

{¶ 17} Normile was convicted of strangulation in violation of R.C. 2903.18(B)(3), which provides: "No person shall knowingly . . . [c]ause or create a substantial risk of physical harm to another by means of strangulation or suffocation." If the victim is a family member, household member, or person with whom the offender is or was in a dating relationship, a violation of R.C. 2903.18(B)(3) is a fourth-degree felony. R.C. 2903.18(C)(3). Normile was also convicted of domestic violence in violation of R.C. 2919.25(A), which states: "No

person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 18} While Normile references these statutes in his appellate brief, he does not state which of the crimes' essential elements he believes the State failed to prove beyond a reasonable doubt after viewing the evidence in a light most favorable to the prosecution. Rather, Normile broadly challenges his convictions by attacking V.H.'s credibility and the weight of the evidence. First, Normile argues that V.H.'s testimony and background are "unsteady," claiming that "[t]he very brief history between [V.H.] and [Normile] reflects disturbing and even bizarre behavior when she was around him." Next, Normile asserts that V.H. "simply cannot be believed" since "[t]he physical evidence of her injuries is just not consistent with the vicious choking and beating she claims happened. . . ." Normile then concludes that the State's evidence was insufficient as a matter of law without citing any authority in support of his specific arguments.

{¶ 19} However, when reviewing sufficiency of the evidence, an appellate court does not assess whether the State's evidence is to be believed, "but whether, if believed, the evidence against a defendant would support a conviction." *Thompkins* at 390. Thus, a reviewing court does not contemplate witness credibility or weigh the evidence when evaluating evidence's sufficiency; rather, "the reviewing court assumes that witnesses testified truthfully and evaluates whether that testimony, along with any other direct or circumstantial evidence presented at trial, satisfies each element of the offense." *State v. Haskins*, 2024-Ohio-5908, ¶ 37 (8th Dist.),

citing *State v. Young*, 2022-Ohio-3132, ¶ 47 (8th Dist.), and *Cleveland v. Clark*, 2024-Ohio-4491, ¶ 37, 39 (8th Dist.) (noting that a challenge to the sufficiency of the evidence presents a question of law, not fact).

{¶ 20} After thorough review of relevant caselaw and the record before us, we find that Normile's strangulation and domestic-violence convictions are supported by sufficient evidence. V.H., Normile's wife at the time of the November 2024 incident, testified that Normile lunged at her, put both of his hands around her neck, and pressed down firmly. V.H. further testified that she believed she was going to die and lost consciousness. When V.H. regained consciousness, Normile was hitting her in the face and around her eyes with a closed fist. Officers responding to the scene observed red marks along V.H.'s neck and chest and bruising above her left eye. Photographs taken by the responding officers also depicted redness, swelling, and scratches around V.H.'s eyes, face, chest, and neck. Although V.H. did not seek medical treatment beyond the local pharmacy, she testified that the bruising she sustained "stayed on [her body] for a while" and her airway was "damaged."

{¶ 21} After viewing the evidence against Normile in a light most favorable to the State — and absent authority cited to the contrary — we find that the trial court could reasonably conclude from substantial evidence that the State proved beyond a reasonable doubt that he (1) knowingly caused or created a substantial risk of physical harm to V.H., his then wife, by means of strangulation or suffocation and (2) knowingly caused or attempted to cause physical harm to V.H. Thus, we find

that Normile's strangulation and domestic-violence convictions are supported by sufficient evidence and his Crim.R. 29 motions for acquittal were properly denied. Accordingly, Normile's first assignment of error is overruled.

### B. Alleged Hearsay Statements

{¶ 22} In his second assignment of error, Normile argues that Officer Abt's and Officer Yoe's testimony about what V.H. told them amounted to hearsay.

{¶ 23} "Hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted in the statement." Evid.R. 801(C). Generally, hearsay is not admissible unless an exception or exclusion applies. Evid.R. 801(D) and 802-804. During a bench trial, "the judge is presumed capable of disregarding improper hearsay evidence, and unless it is demonstrated that the court relied on inadmissible hearsay, a conviction will not be reversed." *State v. John Centers*, 2026-Ohio-451, ¶ 42 (8th Dist.), quoting *State v. Crawford*, 2013-Ohio-1659, ¶ 61 (8th Dist.).

{¶ 24} On appeal, Normile acknowledges that defense counsel withdrew his objection to one of the many statements he now challenges on appeal. Our review of the record further reveals that no other objections were raised throughout the officers' testimony. Because Normile did not object to the alleged hearsay statements, he waived all but plain error under Crim.R. 52(B) and bears the burden of establishing that error on appeal.[2] *State v. Bond*, 2022-Ohio-4150, ¶ 7 ("The main

---

[2] Crim.R. 52(B) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." Under the plain-error standard, the defendant must show that "'but for a plain or obvious error, the

distinction between plain-error review, which is the standard employed when a defendant failed to object at trial, and harmless-error review, which is employed when a defendant did object, is the party that bears the burden."). However, Normile also fails to argue plain error on appeal. "Where a party fails to object to an error to the court below and then fails to make an argument that plain error occurred on an appeal, we will not consider the issue." *State v. Tate*, 2022-Ohio-4745, ¶ 20 (8th Dist.), citing *State v. Duncan*, 2022-Ohio-3665, ¶ 23 (8th Dist.); *State v. Speights*, 2021-Ohio-1194, ¶ 14 (8th Dist.) (citing relevant caselaw and emphasizing that an appellate court is not obligated to construct or develop unraised plain-error arguments).

{¶ 25} Accordingly, we decline to address Normile's hearsay argument and overrule his second assignment of error.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

---

outcome of the proceeding would have been otherwise, and reversal must be necessary to correct a manifest miscarriage of justice.'" *State v. West*, 2022-Ohio-1556, ¶ 22, quoting *State v. Quarterman*, 2014-Ohio-4034, ¶ 16.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

EILEEN T. GALLAGHER, P.J., and
DEENA R. CALABRESE, J., CONCUR